T.C. Memo. 2008-126


UNITED STATES TAX COURT


JAMES A. MATTHEWS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

SUPERIOR PRODUCTS SALES, INC. <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 19277-05, 19278-05.    Filed May 5, 2008.


<u>Harris H. Barnes, III</u>, for petitioners.

<u>John F. Driscoll</u>, for respondent.


MEMORANDUM OPINION

WELLS, <u>Judge</u>:  These consolidated cases, hereinafter

referred to as the instant case, are presently before the Court

on cross-motions for summary judgment pursuant to Rule 121.[1]  The instant case arises from petitions for judicial review of failure to abate interest under section 6404 and Rule 280.  The principal issue for decision is whether respondent's disallowance of interest abatement as to each petitioner represents an abuse of discretion.

### Background

The record consists primarily of the parties' pleadings; their respective cross-motions for summary judgment; various responses, declarations, and memoranda in support of or opposition to the motions, as applicable; and the transcript of a hearing held on the motions.  Additionally, at the hearing the parties filed a stipulation of facts and accompanying exhibits for purposes of deciding the instant motions.  The stipulations of fact are incorporated in this opinion by reference.

Petitioner James A. Matthews (Mr. Matthews) resided in Mississippi, at the time of filing the petition.  Petitioner Superior Products Sales, Inc. (Superior), is a corporation formed under the laws of Mississippi having an address in Tupelo, Mississippi, at the time of filing the petition herein.

For all tax periods ending in 1990 through 1996, Mr. Matthews was the majority shareholder and controlling officer

---

[1] Unless otherwise indicated, section and Code references are to the Internal Revenue Code of 1986, as amended, and Rule references are to the Tax Court Rules of Practice and Procedure.

of Superior, a C corporation under the Code. Superior is a manufacturing enterprise engaged in the fabrication of polyurethane foam and related products for use in furniture. During the early to mid 1990s, Mount Vernon Foam Sales, Inc. (Mount Vernon), was a customer of Superior. Superior filed Forms 1120, U.S. Corporation Income Tax Return, for the taxable years ended March 31, 1994 (TYE 1994), and March 31, 1995 (TYE 1995), on or about December 19, 1994, and December 18, 1995, respectively. Mr. Matthews filed Forms 1040, U.S. Individual Income Tax Return, for the taxable years 1990 and 1992 through 1995 on April 15 of each of the succeeding years. Mr. Matthews likewise filed a Form 1040 for the taxable year 1996, but the record is ambiguous as to whether that return was filed on April 15 or August 18, 1997.

Superior's TYE 1994 was selected by the Internal Revenue Service (IRS) for civil examination. On July 9, 1996, the revenue agent assigned to conduct the examination sent to Superior an initial appointment letter scheduling a meeting for July 22, 1996. That meeting was conducted as scheduled, and the revenue agent thereafter engaged in review of corporate records and additional discussions with representatives throughout August and September 1996. In early October 1996, the examination was expanded to include Superior's TYE 1995, and on October 4, 1996, written notice to that effect was sent to Superior. The revenue

agent also began at that time to explore the possibility of extending the examination to include Mr. Matthews's 1994 and 1995 taxable years. After additional research, the revenue agent on January 28, 1997, first contacted Mr. Matthews in writing regarding examination of his 1994 and 1995 tax years, scheduling an initial appointment for February 19, 1997, and requesting that various documents be produced.

During February 1997 the revenue agent conducted interviews and discussions with appropriate third parties, including representatives of Mount Vernon. During late February 1997, the IRS Examination Division formally made a referral for additional investigation to the IRS Criminal Investigation Division with respect to Superior's TYE 1994 and TYE 1995 and Mr. Matthews's 1994 and 1995 tax years. The referral report cited unreported cash sales to Mount Vernon from which Mr. Matthews diverted the funds for personal use.

The IRS Criminal Investigation Division accepted the referral, and a special agent from that division was assigned to conduct the investigation. In accordance with IRS administrative procedures, the civil examination activity was generally suspended because of the criminal referral, although a revenue agent continued to provide a minor amount of supportive administrative activity in coordination with the special agent. During its course, the criminal investigation was expanded to

include Superior's taxable year ended March 31, 1996 (TYE 1996), and Mr. Matthews's 1996 taxable year.

Criminal prosecution referrals were made by the IRS to the U.S. Department of Justice during late August or early September of 2001. The IRS recommended the prosecution of multiple counts under section 7206(1) and (2), as well as 18 U.S.C. section 371, arising from the preparation and filing of Superior's corporate income tax returns for TYE 1995 and TYE 1996. On February 1, 2002, a waiver of indictment and a criminal information were filed against Mr. Matthews in the U.S. District Court for the Northern District of Mississippi in connection with his involvement in the preparation and filing of Superior's corporate income tax returns for TYE 1995 and TYE 1996.

During February 2002 Mr. Matthews pleaded guilty to one count charging him with violation of section 7206(1) in regard to filing Superior's income tax return for TYE 1995. The criminal fraud charge was premised on the unreported cash sales by Superior to Mount Vernon. Mr. Matthews's sentencing was scheduled for May 2002. During February 2002 Mr. Matthews also expressed a desire to resolve before his scheduled sentencing certain civil aspects arising from the criminal prosecution. In response to Mr. Matthews's expressed wishes, an assigned IRS

revenue agent was authorized to work with Superior and Mr. Matthews in an attempt to resolve relevant civil aspects relating to the taxable years of each ending in 1994 through 1996, even though the criminal aspects of those years were not yet formally resolved.

On March 1, 2002, the revenue agent met with representatives for petitioners and provided them with an information document request (IDR) asking for additional information necessary to conduct the examination. The IDR set a response date of March 18, 2002. On or about April 23, 2002, the revenue agent formally requested approval from appropriate IRS Examination Division personnel to expand the examination to include Superior's taxable years ending March 31, 1991 through 1993 (TYE 1991, TYE 1992, and TYE 1993, respectively), and Mr. Matthews's 1990 through 1993 taxable years. On the basis of information developed by the revenue agent, the extension was approved.

On April 29, 2002, the revenue agent faxed to petitioners' representatives proposed computations reflecting the impact of pertinent unreported income on Superior's TYE 1991 through 1996. Contemporaneously, the revenue agent discussed with the representatives the fact that the unreported income amounts would flow through to Mr. Matthews as dividends. The facsimile transmission was the first written contact by the IRS with either

Superior or Mr. Matthews that dealt with their 1990 through 1993 periods. In response, petitioners' representatives called on May 3, 2003, to advise the revenue agent that petitioners disagreed with certain of the computations, did not wish to discuss years prior to 1994, and would not be providing any further information. Similarly, on May 23, 2002, the representatives advised the revenue agent that no further information would be provided in compliance with IDRs.

During the week of May 23, 2002, the revenue agent made several telephone calls to petitioners' representatives in an attempt to arrange a meeting that was eventually held on May 31, 2002. At that time, the revenue agent served a summons or summonses for additional information with a response date of June 19, 2002. Petitioners responded to the summons(es) with a letter dated June 28, 2002, communicating an intent to supply only a portion of the materials requested and claiming that a significant percentage were protected by privilege doctrines or were no longer available.

Meanwhile, Mr. Matthews was sentenced on May 8, 2002. By letter dated May 28, 2002, the U.S. Department of Justice advised the IRS that it was closing its files on the criminal aspects of the Superior and Matthews cases.

Throughout July and August 2002 the revenue agent and representatives of petitioners continued to communicate with

respect to the summoned information and possible enforcement. On August 26, 2002, the revenue agent received a letter dated August 22, 2002, from petitioners' counsel indicating that petitioners had supplied all that they were able or willing to produce and suggesting that the revenue agent prepare and provide computations based upon the available information.  The parties would then be in a position to determine whether any agreement could be reached as to acceptable amounts of tax liabilities owed.  By facsimile transmittal dated August 28, 2002, the revenue agent responded with a letter and computations reflecting liabilities for Mr. Matthews for years 1990 through 1996. During September and October 2002 the revenue agent had frequent and ongoing communications with representatives of petitioners, seeking to arrive at appropriate tax computation figures for both Superior and Mr. Matthews that would be acceptable to all parties.  These communications included additional records petitioners provided.

Under cover of a November 15, 2002, letter, and with the understanding that the enclosed computations were acceptable to all parties, the revenue agent provided to petitioners proposed final examination reports for all years under audit; i.e., Superior's TYE 1991 through 1996 and Mr. Matthews's tax years 1990 through 1996.  On December 2, 2002, petitioners executed and the IRS received Forms 870, Waiver of Restrictions on Assessment

and Collection and Acceptance of Overassessment, with respect to each of the taxable years covered by the final examination reports.

On January 13, 2003, the IRS received from Mr. Matthews a check for $3,815,655.89. By letter dated January 14, 2003, to Mr. Matthews and his representatives the IRS confirmed receipt of the funds and stated: "The check was applied to Mr. James Matthews, Sr. individual tax liability for tax years 1990 to 1996 inclusive." The remittance paid in full Mr. Matthews's account balances, including tax, penalties, and interest, for 1990 and 1992 through 1996. Superior's account for TYE 1995 had been paid in full by an advance payment on April 30, 2002. The record does not reflect any payments with respect to Superior's liabilities for TYE 1994, and the present status of that account is unclear.

On or about May 19, 2004, Mr. Matthews filed with the IRS a separate Form 843, Claim for Refund and Request for Abatement, with respect to each of his taxable years 1990 and 1992 through 1996. The Forms 843 sought abatement of interest under section 6404(e)(1) for the subject years. Superior likewise filed a separate Form 843 requesting abatement of interest for TYE 1994 and TYE 1995.

The IRS, by letter dated July 20, 2004, disallowed Superior's claims for abatement. Superior responded in August of 2004 with a request for reconsideration by the IRS Office of

Appeals.  Regarding Mr. Matthews's claims, the IRS on December 9, 2004, sent a tentative disallowance, and Mr. Matthews in late December submitted a letter treated as a request for reconsideration.

Both petitioners' cases were assigned to an Appeals officer during January 2005, at which time the officer sent each petitioner an initial letter.  After research and review of relevant files and legal authority, the Appeals officer on May 25, 2005, sent to petitioners' representative a letter scheduling a joint conference for June 15, 2005, and asking that an explanation of the legal authority for petitioners' claims be provided before the meeting.  The conference was rescheduled for June 16, 2005, at the request of petitioners' representative, and so held, but neither an explanation of legal authority nor further factual information was provided to the Appeals officer.

On August 26, 2005, the Appeals officer advised petitioners' counsel by telephone that, on the existing record, he intended to disallow the claims for abatement in their entirety.  A Full Disallowance-Final Determination was issued to each petitioner on September 14, 2005, on the grounds that no error or delay merited abatement of interest.  The petitions in the instant case were thereafter timely filed on October 13, 2005, and the instant cross-motions for summary judgment followed.

## Discussion

I.  General Rules

    A.  Summary Judgment

Rule 121(a) allows a party to move "for a summary adjudication in the moving party's favor upon all or any part of the legal issues in controversy."  Rule 121(b) directs that a decision on such a motion shall be rendered "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law."

The moving party bears the burden of demonstrating that no genuine issue of material fact exists and that he or she is entitled to judgment as a matter of law.  Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994).  Facts are viewed in the light most favorable to the nonmoving party.  Id.  However, where a motion for summary judgment has been properly made and supported by the moving party, the opposing party may not rest upon mere allegations or denials contained in that party's pleadings but must by affidavits or otherwise set forth specific facts showing that there is a genuine issue for trial.  Rule 121(d).[2]

---

[2] Petitioners have filed respective motions for leave to file motion to shift the burden of proof to respondent and have

(continued...)

B.  Section 6404

Section 6404(e), as in effect for the years in issue,

provided in relevant part as follows:

> SEC. 6404(e).  Assessments of Interest
> Attributable to Errors and Delays by Internal Revenue
> Service.--
>
> > (1) In general.-- In the case of any
> > assessment of interest on--
> >
> > > (A) any deficiency attributable in whole
> > > or in part to any error or delay by an
> > > officer or employee of the Internal Revenue
> > > Service (acting in his official capacity) in
> > > performing a ministerial act, or
> > >
> > > (B) any payment of any tax described in
> > > section 6212(a) to the extent that any error
> > > or delay in such payment is attributable to
> > > such an officer or employee being erroneous
> > > or dilatory in performing a ministerial act,
> >
> > the Secretary may abate the assessment of all or
> > any part of such interest for any period.  For
> > purposes of the preceding sentence, an error or
> > delay shall be taken into account only if no
> > significant aspect of such error or delay can be
> > attributed to the taxpayer involved, and after the
> > Internal Revenue Service has contacted the
> > taxpayer in writing with respect to such
> > deficiency or payment.[3]

---

   2(...continued)
lodged corresponding motions to shift the burden.  At the
hearing, however, the parties concurred with the Court that those
motions would need to be reached only if a material fact or facts
remaining in question precluded disposition by summary judgment.
Given the Court's conclusions below, the motions for leave will
be denied as moot.

   3 Sec. 6404(e) was amended in 1996 by the Taxpayer Bill of
Rights 2, Pub. L. 104-168, sec. 301, 110 Stat. 1457 (1996), to
permit abatement with respect to "unreasonable" error or delay in
(continued...)

For purposes of section 6404(e), a "ministerial act" is defined as "a procedural or mechanical act that does not involve the exercise of judgment or discretion, and that occurs during the processing of a taxpayer's case after all prerequisites to the act, such as conferences and review by supervisors, have taken place."  Sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987).[4]  Furthermore, "A decision concerning the proper application of federal tax law (or other federal or state law) is not a ministerial act."  Id.

Section 6404(h)(1) provides the Tax Court with jurisdiction to review denials of requests for abatement of interest under an abuse of discretion standard.[5]  Action constitutes an abuse of

---

[3](...continued)
performing a "ministerial or managerial" act.  The amendment is effective for tax years beginning after July 30, 1996, and is thus inapplicable to the cases at bar.  See Woodral v. Commissioner, 112 T.C. 19, 25 n.8 (1999).

[4] Temporary regulations are entitled to the same weight and binding effect as final regulations.  Peterson Marital Trust v. Commissioner, 102 T.C. 790, 797 (1994), affd. 78 F.3d 795 (2d Cir. 1996).  Final regulations were promulgated under sec. 6404 after the years in issue and contain a definition of "ministerial act" that does not differ from that set forth in the temporary regulations.  Sec. 301.6404-2(b)(2), Proced. & Admin. Regs.

[5] The provision for Tax Court review of interest abatement determinations was enacted as sec. 6404(g).  Taxpayer Bill of Rights 2 (TBOR 2), sec. 302(a), 110 Stat. 1457 (1996).  The provision was then redesignated after the years in issue, first as sec. 6404(i) by the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, secs. 3305(a), 3309(a), 112 Stat. 743, 745, and then as sec. 6404(h) by the Victims of Terrorism Tax Relief Act of 2001, Pub. L. 107-134, sec.
(continued...)

discretion where arbitrary, capricious, or without sound basis in fact or law.  <u>Woodral v. Commissioner</u>, 112 T.C. 19, 23 (1999). Congress originally intended by section 6404(e) to sanction abatement of interest only where failure to do so "would be widely perceived as grossly unfair", not to provide a remedy enabling taxpayers "routinely to avoid payment of interest". H. Rept. 99-426, at 844 (1985), 1986-3 C.B. (Vol. 2) 1, 844; S. Rept. 99-313, at 208 (1986), 1986-3 C.B. (Vol. 3) 1, 208.

## II.  Positions of the Parties

Respondent's motion for summary judgment, arguing that petitioners are not entitled to abatement of interest with respect to any of the tax years in issue, is premised on three principal considerations:  (1) Section 6404(e) as a matter of law precludes abatement for any period before the IRS first contacted the taxpayer in writing with respect to the underlying deficiency or payment of tax; (2) judicial precedent establishes that abatement under section 6404(e) is not available for the period during which a civil examination is suspended for a criminal fraud investigation; and (3) the record reveals no error or delay in performing a ministerial act during any of the remaining periods.

---

[5](...continued)
112(d)(1)(B), 115 Stat. 2435 (2002).  The provision as enacted and redesignated applies to requests for abatement after July 30, 1996.  TBOR 2 sec. 302(b), 110 Stat. 1458.  To avoid confusion, references herein will be to the current designation.

For purposes of the cross-motions for summary judgment, petitioners advance a primary and an alternative position. As reflected in petitioners' computations, the primary argument maintains that interest should be abated for the entire period from the filing of the underlying return until at least December 5, 2002. The alternative argument, offered in acknowledgment of precedent pertaining to criminal investigations, seeks abatement for the period just described, less the interest accruing from March 1, 1997, through May 28, 2002. In making their arguments, petitioners contend that an overarching "grossly unfair" standard should trump period limitations that might otherwise derive from statutory language and interpretive jurisprudence. Petitioners then claim that they should be deemed to have made a sufficient showing of error or delay by the IRS in performing a ministerial act because the IRS failed to keep an adequate record of administrative activity, in violation of IRS Internal Revenue Manual directives, throughout the processing of petitioners' cases.

III.  Analysis

A.  Years Before the Court

As noted supra, the jurisdiction of the Tax Court in interest abatement cases is premised on section 6404(h).  Section 6404(h)(1) authorizes the Court to determine whether a failure to abate interest was an abuse of discretion where:  (1) The Commissioner has mailed to the taxpayer a notice of final determination not to abate interest; (2) the taxpayer files a petition for review within 180 days of the mailing of the notice; and (3) the taxpayer meets the income limitations provided in section 7430(c)(4)(A)(ii).[6]  See also Rule 280(b).

With respect to Mr. Matthews, the record reflects that he submitted to the IRS requests for abatement for the taxable years 1990, 1992, 1993, 1994, 1995, and 1996.  The notice of final determination issued to Mr. Matthews likewise denied abatement explicitly for the 1990 and 1992 through 1996 periods.  However, in petitioners' computations for purposes of the pending cross-motions, interest accruing with respect to Mr. Matthews's taxable year 1991 is included.  Because the record establishes no basis upon which the Court may exercise jurisdiction over any claims

---

[6] Petitioners have asserted that they satisfy the income limitations imposed by sec. 7430(c)(4)(A)(ii), and respondent has not challenged those assertions.  The Court therefore will not further address the requirement under sec. 7430(c)(4)(A)(ii).

pertaining to 1991, the Court may not consider or direct abatement for that year.

Similarly, as to Superior, the record contains Forms 843 submitted to the IRS seeking interest abatement for TYE 1994 and TYE 1995. The notice of final determination issued to Superior specifically addresses disallowance for TYE 1994 and TYE 1995. Consistently, that notice was attached to the petition at docket No. 19278-05. However, petitioners' computations include interest accruing with respect to Superior's TYE 1991, TYE 1992, TYE 1993, TYE 1994, and TYE 1995. Absent any indication that a final determination has been issued or petitioned for Superior's TYE 1991, TYE 1992, or TYE 1993, the Court is constrained to conclude that interest pertaining to those periods should not be considered or allowed. Having clarified the tax years properly before us, we turn to our review of those years and to the issue of whether respondent's denial of interest abatement with respect to the years in issue constitutes an abuse of discretion.

B. Abatement for Periods Before First Contact

As quoted in full supra, the flush language of section 6404(e)(1) expressly limits the periods for which abatement under that provision is available, stating that "an error or delay shall be taken into account only * * * after the Internal Revenue Service has contacted the taxpayer in writing with respect to such deficiency or payment." The foregoing restriction has been

the subject of repeated judicial interpretation and, without exception, applied in instances where taxpayers have sought abatement for the period preceding notification from the IRS. E.g., Krugman v. Commissioner, 112 T.C. 230, 239 (1999); Hawksley v. Commissioner, T.C. Memo. 2000-354; Banat v. Commissioner, T.C. Memo. 2000-141, affd. 5 Fed. Appx. 36 (2d Cir. 2001); Nerad v. Commissioner, T.C. Memo. 1999-376. We have explained the rationale for the statutory limit as follows:

> Petitioner's argument that the IRS failed to examine his return promptly in light of the statement on the return is without merit. We have previously held that this Court is not at liberty to modify a period of time prescribed by a statute of limitations in which the Commissioner is authorized to act. See Foster v. Commissioner, 80 T.C. 34, 229 (1983), affd. in part and vacated in part on another issue 756 F.2d 1430 (9th Cir. 1985); Saigh v. Commissioner, 36 T.C. 395, 424-425 (1961). Section 6501 expressly defines the period that respondent is authorized to assess deficiencies against taxpayers. * * * The timeliness of respondent's examination is not an error for purposes of section 6404(e). [Nerad v. Commissioner, supra.]

Moreover, congressional pronouncements and action both at the time of enactment of section 6404(e) and upon amendment of section 6404 after the years in issue strongly buttress adherence to the plain meaning of the text. Legislative history accompanying the 1986 enactment of section 6404(e) notes specifically that section 6404(e)(1) "does not therefore permit the abatement of interest for the period between the date the taxpayer files a return and the date the IRS commences an audit,

regardless of the length of that time period." H. Rept. 99-426, supra at 844, 1986-3 C.B. (Vol. 2) at 844; S. Rept. 99-313, supra at 208, 1986-3 C.B. (Vol. 3) at 208.

We also note that Congress amended section 6404 with the addition of subsection (g) in 1998, thereby providing for a suspension of interest where the Secretary fails to notify a taxpayer of liability within a stated period (18 months under the original version of section 6404(g)) from the later of the filing or the due date of the corresponding return. Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3305, 112 Stat. 743. Although the provision is effective only for tax years ending after July 22, 1998, id., and is thus inapplicable here, it is relevant to the extent that its enactment suggests the absence of an existing remedy under section 6404(e)(1) in analogous circumstances.

Petitioners acknowledge the timing restrictions in the flush language of section 6404(e)(1), as well as the judicial and legislative authorities described supra. Petitioners contend, nonetheless, that the apparent strict interpretation signaled by the statute must be balanced against, and moderated by, the statement contained in the legislative history and often repeated in caselaw that Congress did "not intend that this provision be used routinely to avoid payment of interest; rather it intends that the provision be utilized in instances where failure to

abate interest would be widely perceived as grossly unfair."  H.
Rept. 99-426, supra at 844, 1986-3 C.B. (Vol. 2) at 844; S. Rept.
99-313, supra at 208, 1986-3 C.B. (Vol. 3) at 208.  Petitioners
maintain that, taking into account both clauses of the foregoing
statement:

> it is obvious that a "grossly unfair" standard must be
> considered in evaluating each unique set of facts and
> circumstances.  In other words, the statute should be
> interpreted based on strict construction of the
> language regarding dates, amounts, etc.; however, this
> strict interpretation is limited to producing an
> equitable result that is not "grossly unfair."

Petitioners contend that the "notion of limiting strict
construction of I.R.C. § 6404 with a subjective equitable
standard ('grossly unfair') is also reflected in an evolving
policy trend of both the IRS and Congress."  In support of their
contentions, petitioners cite various revenue procedures and
statutory enactments (including section 6404(g)).

Petitioners argue that for certain of the years in issue 8
to 10 years passed before the receipt of any notice that the IRS
was considering audits of the underlying returns, concluding:

> In the present matter, the assessment of compound
> interest for such a long period of time outside the
> normal statute of limitations; and without providing
> reasonable notice to the taxpayer from the onset of the
> investigation, clearly defeats any notion of fair play
> and runs contrary to the evolving policy demonstrated
> by the IRS and Congress.  Such "grossly unfair" acts
> are the limiting standard to which Congress was clearly
> referring in H. Rept. 99-426, at 844 (1985).
> Furthermore, this case far exceeds the scope of
> "routine" in consideration of the abatement of
> interest.  Not only does this matter involve

significant dollar amounts, but it also contains elements of criminal and civil fraud.

The present case sets forth unique circumstances where, in lieu of the trend enhancing the taxpayer's ability to eliminate and/or minimize interest charges, upholding the interest charges against the taxpayer would produce a result that is "grossly unfair" and in direct conflict with the application of the statute as intended by Congress. * * *

We disagree for several reasons. First are the fundamental and closely related tenets of statutory construction that (1) a statute is to be interpreted so as to give effect to its plain and ordinary meaning unless to do so would produce an absurd or futile result, and (2) a statute clear and unambiguous on its face must be regarded as conclusive absent an unequivocal expression of legislative intent to the contrary. E.g., Am. Tobacco Co. v. Patterson, 456 U.S. 63, 68 (1982); United States v. Am. Trucking Associations, Inc., 310 U.S. 534, 543-544 (1940); Fla. Hosp. Trust Fund v. Commissioner, 103 T.C. 140, 152 (1994), affd. 71 F.3d 808 (11th Cir. 1996). In the instant case, the text in issue is a brief statement of temporal limitation, a relatively routine feature of many taxing statutes. We are hard pressed to see any absurdity, futility, or ambiguity that would permit the text of the statute to be overridden by legislative history, especially by the legislative expression on which petitioners rely, which falls far short of an unequivocal repudiation of the statutory language. Rather, we believe that the two would appear to reflect a harmony of purpose.

Although petitioners attempt to characterize the "grossly unfair" clause as a liberalization, the restrictive nature of the language would seem more rationally to be interpreted as reiterating the general narrowness of the relief afforded by the statute. In the legislative history, the "grossly unfair" clause is followed immediately by statements reprising specific limits imposed by section 6404(e)(1) on the period for which relief may be available, including the rule of IRS contact. See H. Rept. 99-426, supra at 844, 1986-3 C.B. (Vol. 2) at 844; S. Rept. 99-313, supra at 208, 1986-3 C.B. (Vol. 3) at 208. Likewise, the clause is immediately preceded by the statement cautioning against routine use to avoid payment. In that configuration, we find it particularly difficult to read the "grossly unfair" clause in the legislative history as an exception arising from the midst of what is otherwise a description of the narrowness of the remedy.

Furthermore, even if the Court were willing to accept a "grossly unfair" exception, the facts of the instant case would fail to support its application. Stated simply, petitioners seek equitable relief, whereas the instant case is tainted by Mr. Matthews's criminal conviction for tax fraud. As the Supreme Court has observed in the context of the unlimited statute of limitations for assessment in the case of a fraudulent return:

> We do not find petitioners' complaint of "unfair treatment" persuasive. Petitioners claim that it is

unfair "to forever suspend a Sword of Damocles over a taxpayer who at one time may have filed a fraudulent return, but who has subsequently recanted and filed an amended return providing the Government with all the information necessary to properly assess the tax." * * * But it seems to us that a taxpayer who has filed a fraudulent return with intent to evade tax hardly is in a position to complain of the fairness of a rule that facilitates the Commissioner's collection of the tax due. A taxpayer who has been the subject of a tax fraud investigation is not likely to be surprised when a notice of deficiency arrives, even if it does not arrive promptly after he files an amended return. [Badaracco v. Commissioner, 464 U.S. 386, 400 (1984).]

Petitioners in the instant case are essentially seeking to be placed in the position they would have occupied had they filed and paid timely. We will not permit such a result under the facts. With respect to each of the tax years in issue, petitioners are not entitled to abatement of interest for any period before the first written IRS contact regarding liabilities for that year. The parties stipulated the dates of first contact as follows:

|  |  |  |  |
|---|---|---|---|
| Superior | TYE | 1994 | July 9, 1996 |
|  | TYE | 1995 | Oct. 4, 1996 |
| Mr. Matthews |  | 1990 | Apr. 29, 2002 |
|  |  | 1992 | Apr. 29, 2002 |
|  |  | 1993 | Apr. 29, 2002 |
|  |  | 1994 | Jan. 28, 1997 |
|  |  | 1995 | Jan. 28, 1997 |

Concerning Mr. Matthews's 1996 taxable year, the parties stipulated that no written document was sent before the beginning of the criminal investigation.

C.  Abatement During Criminal Investigation

As stipulated by the parties, the relevant criminal investigation pertaining to Superior and Mr. Matthews was ongoing from late February 1997 until May 28, 2002.  The subject of interest abatement vis-a-vis criminal investigations has been addressed in previous litigation.  Courts have long recognized the general policy within the IRS to suspend resolution of a civil examination pending completion of a criminal examination, as well as the realities that may necessitate such an approach. See, e.g., Badaracco v. Commissioner, supra at 399; United States v. LaSalle Natl. Bank, 437 U.S. 298, 308-313 (1978).  In the words of the Supreme Court:  "As a practical matter, therefore, the Commissioner frequently is forced to place a civil audit in abeyance when a criminal prosecution is recommended."  Badaracco v. Commissioner, supra at 399.

This Court has noted that while a tax fraud investigation comprises both civil and criminal aspects, the criminal aspects dominate insofar as the investigation is controlled by the IRS Criminal Investigation Division.  Taylor v. Commissioner 113 T.C. 206, 211-212 (1999), affd. 9 Fed. Appx. 700 (9th Cir. 2001); Gorgie v. Commissioner, T.C. Memo. 2000-80.  Such a policy is intended to avoid the conflicts between civil and criminal discovery rules, the issues related to witness testimony and self-incrimination, and the problems of inherent confusion that

could result if civil and criminal proceedings were allowed to take place concurrently.  Taylor v. Commissioner, supra at 212.  Consequently, civil assessment and collection are typically deferred.  Id.

In the context of a specific case, the foregoing and related considerations must be weighed and applied by the IRS in deciding how to proceed.  Id. at 212-213.  As a result, this Court has held:  "The timing of the decision to defer the civil proceedings until resolution of the criminal aspects does not detract from the fact that the exercise of judgment is required in making such a decision."  Id. at 213.  The decision therefore is "not a ministerial act."  Id.; Hanks v. Commissioner, T.C. Memo. 2001-319; Gorgie v. Commissioner, supra.

Petitioners acknowledge and do not appear to raise any direct challenge of the above rule.  They posit, however, "that while the decision to suspend civil activity in itself may not be a ministerial duty, actions prior to and subsequent to the making of the actual decision may be defined as ministerial."  We disagree with their argument as applied to the circumstances of this case.  See Gorgie v. Commissioner, supra ("The time spent investigating whether to impose civil or criminal fraud penalties, regardless of petitioners' guilt or innocence, is not a ground under section 6404(e) that would allow respondent to abate interest.").

We conclude that petitioners are not entitled to interest abatement for the period of the criminal investigation. Additionally, in the light of the parties' stipulations and the circumstances discussed infra, we find it unnecessary to determine whether the period of suspension should be considered to end on May 28, 2002, when the U.S. Department of Justice formally closed the files on its criminal case or at the earlier time in February 2002 when the IRS resumed civil examination activity at petitioners' express request.

D.  Abatement for Periods From July 1996 to February 1997 and From February to November 2002

There remain two periods during which some or all of the tax years in issue were being examined for civil purposes.  Those timeframes will be evaluated in turn for the existence of ministerial error or delay.  As a threshold matter, however, we will address the primary argument advanced by petitioners in connection with the concept of ministerial error or delay.

Petitioners quote extensively from provisions of the Internal Revenue Manual, contending throughout their submissions on this point that "The IRS, according to the Internal Revenue Manual, is mandated to keep copious records of all action taken by the Service on each case."  Petitioners express their position as follows:

> The Examining Officer's Activity Records on the Petitioner show that the IRS has produced a number of records that are vague, uninformative, and fail to

comply with it [sic] own practice and procedures. Due to the IRS's failure to provide detailed records as required by its own practice and procedures, Petitioner claims that it is entitled, as a matter of law, to have such acts deemed favorably to the Petitioner, and regarded by the Court as being ministerial in nature. The Court should further determine that it is, in fact, the IRS's duty to keep copious records of all action taken by the Service, its examiners, or others responsible for activity on the case; and that the Service is in violation of such a ministerial duty in this case. In the present case, the IRS violated its own manual.

Initially, we note the well-settled principle that the Internal Revenue Manual does not have the force of law, is not binding on the IRS, and confers no rights on taxpayers. E.g., Fargo v. Commissioner, 447 F.3d 706, 713 (9th Cir. 2006), affg. T.C. Memo. 2004-13; Carlson v. United States, 126 F.3d 915, 922 (7th Cir. 1997); Tavano v. Commissioner, 986 F.2d 1389, 1390 (11th Cir. 1993), affg. T.C. Memo. 1991-237; Marks v. Commissioner, 947 F.2d 983, 986 n.1 (D.C. Cir. 1991), affg. T.C. Memo. 1989-575. Moreover, even if some duty of documentation incumbent upon the IRS could be inferred from the Internal Revenue Manual or other pertinent law, petitioners' contentions as applied to the instant case fail in the circumstances.

In support of their argument petitioners enumerate seven periods (many overlapping) as to which they claim that particular IRS records, or the IRS records generally, are deficient. According to petitioners, the cited periods and/or records reflect no activity, state only "worked on case", or otherwise

reveal no activity of significance. However, six of the seven identified periods transpired entirely within the period of the criminal investigation. The sole remaining complaint is raised with respect to entries from January 28, 1997, through December 2, 2002, in a specific record of the examining revenue agent. That record likewise is without significant relevance as it is merely a correspondence log and full activity for relevant times is recounted in other records of the revenue agent. Accordingly, even petitioners' argument fails.

### 1. Period From July 1996 to Late February 1997

The first written contact with respect to any of the tax years in issue was the appointment letter concerning Superior's TYE 1994 sent on July 9, 1996. Superior's TYE 1995 was added to the audit, and the first notice thereof was provided on October 4, 1996. Similarly, Mr. Matthews's 1994 and 1995 taxable years were added, with written notice sent on January 28, 1997.

Examination of the revenue agent's activity records from July 1996 through mid-February 1997 reveals consistent and ongoing substantive work on the cases, including interviews, courthouse research, review of returns and taxpayer or third-party records, and analysis. By the second week of February, the emphasis had shifted to coordination and preparation of the fraud referral, but nowhere do the records reflect any serious breaks in activity. We perceive nothing in the processing of

petitioners' cases before the commencement of the criminal investigation that would suggest ministerial errors or delays.

 2. <u>Period From February to Mid-November 2002</u>

Civil examination of petitioners' returns resumed in February of 2002, and proposed final examination reports setting forth balances due for each of the years in issue were provided to petitioners on November 15, 2002.  IRS records for the intervening period reflect consistent and ongoing examination activity.  Regular communication occurred between the revenue agent and petitioners' representatives, including repeated requests by the revenue agent for information.  Additionally, by written contact on April 29, 2002, a date falling within this period, Mr. Matthews's 1990, 1992, and 1993 taxable years were added to the audit.  Notably, petitioners initially declined to provide certain information requested, forcing the IRS to pursue summons procedures.  Furthermore, even when petitioners began to work more cooperatively with the revenue agent in the fall of 2002, information was typically not provided by promised deadlines, necessitating considerable followup by the revenue agent.

Once negotiations between the parties concerning the relevant computations were completed, the revenue agent prepared and provided the final examination reports within 2 days.  From that point, petitioners were solely responsible for terminating

the accrual of interest by remitting payment. On the record we find no ministerial errors or delays affecting the period from February through mid-November 2002.

E. <u>Conclusion</u>

In accordance with governing law and the complete records in the instant case, we conclude that respondent committed no abuse of discretion in determining that petitioners were not entitled to abatement of interest pursuant to section 6404(e)(1) with respect to any of the years in issue. Respondent's motions for summary judgment will be granted, and petitioners' cross-motions will be denied.

The Court has considered all other arguments made by the parties and, to the extent not specifically addressed herein, has concluded that they are irrelevant, moot, or without merit. To reflect the foregoing,

<u>Appropriate orders and decisions for respondent will be entered</u>.