T.C. Memo. 2019-99

UNITED STATES TAX COURT

JON D. ADAMS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17289-18.                    Filed August 12, 2019.

James G. McGee, Jr., for petitioner.

Ardney J. Boland III and Susan S. Canavello, for respondent.

MEMORANDUM OPINION

URDA, Judge: In 1999 petitioner, Jon D. Adams, sold Secrets Cabaret

(Secrets) in Jackson, Mississippi, but did not fully account for the sale on his 1999

Federal income tax return--original or amended. This particular secret did not

keep, and Mr. Adams faced first criminal prosecution (for false statements on an

amended 1999 Federal income tax return) and then civil deficiency proceedings

[*2] before the Internal Revenue Service (IRS) and this Court.  In 2016 we entered a stipulated decision according to which Mr. Adams agreed to a 1999 tax deficiency of $91,762 and a civil fraud penalty under section 6663[1] of $68,822.  Adams v. Commissioner, T.C. Dkt. No. 8808-14 (June 10, 2016).

Mr. Adams returns to this Court challenging the IRS' later determination to deny his request for the abatement of interest on his 1999 tax liability.  The Commissioner moves for summary judgment, contending that no disputed issues of material fact remain and that the IRS did not abuse its discretion in denying Mr. Adams' request.  We agree and accordingly will grant the motion.

Background

Mr. Adams resided in Jackson, Mississippi, at the time he filed the petition in this case.  He also lived there in 1999, when the back story to our case picks up.  Mr. Adams owned two Jackson establishments, one of which (Secrets) he sold in October of that year.  Mr. Adams did not report the sale proceeds in his original 1999 Federal income tax return.  Mr. Adams filed an amended return in 2001 in which he added approximately $450,000 to his taxable income, ostensibly to reflect the proceeds from selling Secrets.

---

[1]All section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  We round all dollar amounts to the nearest dollar.

**[*3]** A.     Criminal Investigation

The IRS launched a criminal investigation in 2002.  Five years later Mr.

Adams was indicted under section 7206(1) for making false statements on his

1999 amended tax return, as well as on his 2000 tax return.  Although a jury

convicted on both counts, the Court of Appeals for the Fifth Circuit vacated the

conviction as to the 1999 count, citing defects in the indictment.  See United

States v. Adams, 314 F. App'x 633, 638-644 (5th Cir. 2009).  The Government

elected not to reindict.[2]

B.     Examination and Deficiency Proceedings

The civil examination into Mr. Adams' proper tax liabilities for 1999 and

2000 began in January 2011.  From March until August 2011 an examining officer

gathered and reviewed various files, established initial telephone contact with Mr.

Adams, and obtained the necessary authorization (from the IRS Fraud Technical

Advisor) to assert a civil fraud penalty.  By letter dated August 11, 2011, the

examining officer informed Mr. Adams that his returns for his 1999 and 2000

taxable years had been selected for examination.  Although the examining officer

---

[2]Mr. Adams subsequently sought postconviction relief under 28 U.S.C. sec. 2255 (2006) as to his conviction for false statements on his 2000 tax return. The District Court for the Southern District of Mississippi denied that relief in 2010.  See United States v. Adams, No. 3:07cr31-DPJ-LRA, 2010 WL 55937 (S.D. Miss. Jan. 4, 2010).  Mr. Adams was released from prison in 2011.

**[*4]** tried to set up a meeting, Mr. Adams demurred on the grounds that he lacked information and that representatives would act on his behalf.

Mr. Adams' representatives did not officially appear until October. During the interim the examining officer did not stand still; her notes reflect that she researched various issues and continued to actively work on the case. After the representatives appeared, she scheduled a meeting during which the parties disputed the impact of the Court of Appeals' decision on the statute of limitations governing assessment for the 1999 taxable year.

In the wake of this meeting the examining officer continued her examination into both taxable years, with the parties resolving the 2000 liability in April 2012. Unable to do the same for 1999, the IRS issued on May 16, 2012, a Letter 950 (30-day letter), which set forth the IRS' proposed changes for Mr. Adams' 1999 taxable year. As most relevant to this case, the 30-day letter proposed increasing Mr. Adams' taxable income by $290,700, of which $277,551 was attributable (apparently) to the sale of Secrets. This adjustment resulted in a tax deficiency of $111,082. The 30-day letter also proposed a civil fraud penalty of $83,311.

Mr. Adams filed an appeal to the IRS Office of Appeals in June 2012. In September of that year, the Office of Appeals assigned the case to an Appeals

[*5] officer, whose initial letter advised Mr. Adams that "[i]f you wish to stop or reduce interest on part or all of the balance due, you can send tax payments to the Appeals office working your case." Mr. Adams made no such payments.

According to his case activity notes, the Appeals officer did intermittent work on the case between September 2012 and April 2013. On April 9, 2013, the Appeals officer sent Mr. Adams a letter giving him two weeks to provide documentation or an explanation weighing against the IRS' proposed adjustments and civil fraud penalty.

On April 22, 2013, Mr. Adams' representative asked for more time to familiarize himself with the matter and to assemble information. Although the Appeals officer granted a brief extension, no information came. Between May and the end of July, the Appeals officer prepared a Form 5402-c, Appeals Transmittal and Case Memo, which recommended sustaining the IRS' position as to the adjustments to taxable income and the imposition of the fraud penalty. He also prepared a draft statutory notice of deficiency for review by IRS lawyers.

An IRS Appeals team manager approved the Form 5402-c on January 8, 2014, and a notice of deficiency was issued to Mr. Adams on January 14. The notice determined a tax deficiency of $111,151 and a fraud penalty of $83,363. Mr. Adams filed a timely petition for redetermination in this Court in April 2014.

[*6] The case culminated in a stipulated decision entered June 10, 2016, according to which the parties agreed to a 1999 deficiency of $91,762 and a fraud penalty of $68,822.

## C.    Interest Abatement Request

In March 2017 Mr. Adams filed a Form 843, Claim for Refund and Request for Abatement, in which he asked for the abatement of $207,044 in interest for his 1999 taxable year.[3]  Attached to the Form 843 was a letter from Mr. Adams' attorney (dated February 15, 2017, and addressed to the Taxpayer Advocate Service).  Mr. Adams' attorney argued that abatement was justified under section 6404(a) and (e).  He asserted that section 6404(a) authorized abatement because the interest amount was "grossly unfair".  He also argued for abatement under section 6404(e)(1) because of "arbitrary delays by the Commissioner".

The IRS issued a preliminary rejection of the abatement request on the ground that there had been no unreasonable error or delay relating to the performance of a ministerial or a managerial act.  The revenue agent assigned to the case explained that section 6404(b) precluded Mr. Adams from premising an

---

[3]Respondent purports to include a copy of Mr. Adams' Form 843 and supporting letter as an exhibit to a declaration in support of respondent's motion for summary judgment.  The letter, however, seems to be missing the last page.  Mr. Adams did not object to this (ostensibly) incomplete exhibit, and the issue has no bearing on our resolution of this case.

**[\*7]** abatement claim on section 6404(a). She further observed that Mr. Adams had failed to identify a specific unreasonable error or delay in the performance of a ministerial or a managerial act under section 6404(e)(1).

Mr. Adams appealed but fared no better the second time around. On February 27, 2018, the IRS issued a final determination denying Mr. Adams' request for abatement of interest. The IRS' determination maintained that "taxpayer failed to show that any IRS employee or officer committed unreasonable error or delay in performing ministerial or managerial acts".

Mr. Adams filed a timely petition under section 6404(h)(1) challenging the IRS' denial of his request for abatement of interest.[4]

## Discussion

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Under Rule 121(b) the Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520

---

[4]Mr. Adams' petition did not address whether he met the net worth requirement incorporated into sec. 6404(h)(1). Mr. Adams has since provided us with sufficient information to conclude that he satisfies this requirement (and that we can exercise jurisdiction). See, e.g., Vercel v. Commissioner, T.C. Memo. 2014-20, at \*3.

**[*8]** (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). While we construe factual materials and inferences drawn from them in the light most favorable to the nonmoving party, that party may not rest upon the mere allegations or denials of his pleadings but instead must set forth specific facts showing that there is a genuine dispute for trial. Rule 121(d); see Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

A.      Abatement of Interest Framework

Interest on a Federal income tax liability arises automatically under section 6601. We generally lack jurisdiction over issues concerning interest computations. Urbano v. Commissioner, 122 T.C. 384, 390 (2004); see also Med James, Inc. v. Commissioner, 121 T.C. 147, 151 (2003). Congress authorized the Commissioner to abate interest for reasons specified in section 6404, subject to abuse-of-discretion review by this Court. See sec. 6404(h); Woodral v. Commissioner, 112 T.C. 19, 23 (1999); Foote v. Commissioner, T.C. Memo. 2015-187, at *15-*16, aff'd, 700 F. App'x 760 (9th Cir. 2017).

This case implicates three subsections of section 6404. Section 6404(a)(1) empowers the IRS to abate the unpaid portion of the assessment of any tax or any liability in respect thereof that is "excessive in amount". But what section 6404(a) gives, section 6404(b) takes away (in certain circumstances). See, e.g., Urbano v.

[*9] Commissioner, 122 T.C. at 390. Section 6404(b) provides that a taxpayer may not file a claim for abatement "in respect of an assessment of any tax imposed under subtitle A or B." We have held that section 6404(b) precludes abatement under section 6404(a)(1) of interest on income tax. See Urbano v. Commissioner, 122 T.C. at 395; Kersh v. Commissioner, T.C. Memo. 2009-260, 98 T.C.M. (CCH) 458, 462 (2009); Corson v. Commissioner, T.C. Memo. 2009-95, 97 T.C.M. (CCH) 1498, 1500 (2009).

Section 6404(e)(1)(A) authorizes the Commissioner to abate an assessment of interest on "any deficiency attributable * * * to any unreasonable error or delay by an officer or employee of the Internal Revenue Service * * * in performing a ministerial or managerial act".[5] "Ministerial act * * * means a procedural or mechanical act that does not involve the exercise of judgment or discretion, and that occurs during the processing of a taxpayer's case after all prerequisites to the act, such as conferences and review by supervisors, have taken place." Sec. 301.6404-2(b)(2), Proced. & Admin. Regs. A "[m]anagerial act" is "an administrative act that occurs during the processing of a taxpayer's case involving

_____

[5]Although sec. 6404(b) limits sec. 6404(a), it does not alter the IRS' authority under sec. 6404(e). See Corbalis v. Commissioner, 142 T.C. 46, 53 (2014); Corson v. Commissioner, T.C. Memo. 2009-95, 97 T.C.M. (CCH) 1498, 1500-1501 (2009); see also sec. 301.6404-2(a)(1)(i), Proced. & Admin. Regs.

**[*10]** the temporary or permanent loss of records or the exercise of judgment or discretion relating to management of personnel." Id. subpara. (1). A decision concerning the proper application of Federal tax law is neither a managerial nor a ministerial act. Id. para. (b).

The flush language of section 6404(e)(1) adds two caveats. First, an error or delay is taken into account only after the IRS has contacted the taxpayer in writing with respect to the deficiency or payment. Sec. 6404(e)(1) (flush language). Second, an error or delay is considered "only if" no significant aspect of the error or delay is attributable to the taxpayer involved. Id.

B.     Analysis

The undisputed facts show that the IRS did not abuse its discretion in denying Mr. Adams' interest abatement request under either section 6404(a) or (e)(1). As an initial matter, relief under section 6404(a) is unavailable to Mr. Adams because he seeks abatement of interest on an income tax. Section 6404(b) precludes such relief. See Urbano v. Commissioner, 122 T.C. at 395; Corson v. Commissioner, 98 T.C.M. (CCH) at 1500; Kersh v. Commissioner, 98 T.C.M. (CCH) at 462.

As to section 6404(e)(1), Mr. Adams asserts that two separate periods show unreasonable delays in performing ministerial or managerial acts that justify

**[*11]** abatement: (1) the period of the criminal investigation and prosecution of Mr. Adams, during which the IRS chose not to pursue a civil examination, and (2) the period of the civil deficiency examination and Tax Court litigation. Neither suffices.

The flush language of section 6404(e)(1) authorizes abatement of interest only "after the Internal Revenue Service has contacted the taxpayer in writing with respect to" the deficiency in question. In other words, "the period pursuant to section 6404(e)(1) may begin when the IRS commences an audit." Allcorn v. Commissioner, 139 T.C. 53, 57 (2012); see also Sims v. Commissioner, T.C. Memo. 1999-414, 78 T.C.M. (CCH) 1198, 1200 (1999). Although Mr. Adams contends that the period should begin with the first issuance of written contact regarding his criminal investigation, he offers no support for deviating from our precedent. So we will not. As both parties agree that the IRS initiated its audit (in writing) on August 11, 2011, we conclude that Mr. Adams is not entitled to abatement under section 6404(e)(1) for any period before that date.[6]

---

[6]Even if we were to adopt Mr. Adams' interpretation, it would not avail him. We have repeatedly held that the IRS' decision to pause civil deficiency proceedings until the conclusion of a criminal case is not a "ministerial act". See, e.g., Taylor v. Commissioner, 113 T.C. 206, 212-213 (1999), aff'd, 9 F. App'x 700 (9th Cir. 2001); Matthews v. Commissioner, T.C. Memo. 2008-126, 95 T.C.M. (CCH) 1486, 1492 (2008). We have explained that this policy "is intended to

(continued...)

[*12] Nor is he entitled to abatement for any period after that date. The undisputed facts show that the examining officer and the Appeals officer--in concert with the IRS Fraud Technical Advisor, managers, and lawyers--worked to determine Mr. Adams' correct tax liability and that lawyers from the IRS Office of Chief Counsel then defended the IRS' determination before this Court. "It is well settled that a decision concerning the proper application of Federal income tax law necessarily requires the exercise of judgment and discretion." Foote v. Commissioner, at *20; see also sec. 301.6404-2(b), Proced. & Admin. Regs. We have also explained that the mere passage of time does not establish error or delay in performing a ministerial or a managerial act. See, e.g., Roudakov v. Commissioner, T.C. Memo. 2017-121, at *9; Foote v. Commissioner, at *23; Bucaro v. Commissioner, T.C. Memo. 2009-247, 98 T.C.M. (CCH) 388, 393 (2009). And any decision by respondent's counsel "on how to proceed in the litigation phase of the case necessarily required the exercise of judgment and thus cannot be a ministerial act." Foote v. Commissioner, at *29 (quoting Swanson v.

---

[6](...continued)
avoid the conflicts between civil and criminal discovery rules, the issues related to witness testimony and self-incrimination, and the problems of inherent confusion that could result if civil and criminal proceedings were allowed to take place concurrently." Matthews v. Commissioner, 95 T.C.M. (CCH) at 1492. This decision likewise falls outside the definition of a "managerial act". See sec. 301.6404-2(b)(1), Proced. & Admin. Regs.

**[\*13]** Commissioner, T.C. Memo. 2010-131, 99 T.C.M. (CCH) 1542, 1545 (2010)); see also Krehnbrink v. Commissioner, T.C. Memo. 2019-56, at \*14 ("The passage of time during litigation does not establish error or delay in the performance of a ministerial or managerial act.").[7]

Finding no abuse of discretion in any respect, we will grant summary judgment for respondent and affirm the IRS' determination to deny Mr. Adams' request for abatement of interest relating to his 1999 taxable year.

To reflect the foregoing,

An appropriate order and decision will be entered.

---

[7]The undisputed facts also show that a significant part of the purported delay both before the IRS and in this Court was attributable to (reasonable) requests by Mr. Adams' representatives for continuances. The flush language of sec. 6404(e)(1) would prohibit abatement on this ground as well.