T.C. Memo. 2009-247

UNITED STATES TAX COURT

RUSSELL J. BUCARO, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17659-07.                    Filed November 2, 2009.

Russell J. Bucaro, pro se.

<u>Steven W. LaBounty</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  On February 14, 2007, respondent issued a
notice of final determination (determination) partially
disallowing petitioner's claim for abatement of interest with
respect to petitioner's unpaid Federal income tax liabilities for
1996 and 1997.  Petitioner timely filed a petition under section

6404(h)[1] and Rule 280 contesting respondent's determination.  The
only issue[2] for decision is whether respondent's determination
not to abate interest from April 1, 2000, through August 31,
2001, from January 2, 2002, through November 30, 2003, and from
June 2, 2004, through May 16, 2006, with respect to petitioner's
1996 and 1997 Federal income tax liabilities was an abuse of
discretion.[3]

---

[1]Unless otherwise indicated, all section references are to
the Internal Revenue Code as amended, and all Rule references are
to the Tax Court Rules of Practice and Procedure.

[2]In his Forms 843, Claim for Refund and Request for
Abatement (collectively, abatement request), petitioner also
sought an abatement of penalties for 1996 and 1997.  Respondent's
determination did not address petitioner's request to abate
penalties.  In fact, it does not appear that respondent had
assessed any penalties or additions to tax with respect to
petitioner's 1996 and 1997 returns before the notice of
determination was issued, which probably explains why the notice
of determination does not address that part of petitioner's
abatement request.  In any event, we lack jurisdiction to
determine whether respondent should have abated penalties or
additions to tax.  Sec. 6404(g); Krugman v. Commissioner, 112
T.C. 230, 237 (1999); Woodral v. Commissioner, 112 T.C. 19, 21
n.4 (1999).

[3]In his abatement request petitioner asserted that
respondent should abate interest from Apr. 1, 2000, through
Sept. 30, 2004, on his 1996 and 1997 deficiencies.  After
respondent partially denied petitioner's abatement request,
petitioner appealed to the Appeals Office.  In his appeal he
again sought full relief from interest from Apr. 1, 2000, through
Sept. 30, 2004.  However, he also claimed respondent delayed
consideration of his abatement request.  In the determination
respondent denied abatement of interest from Apr. 1, 2000,
through May 16, 2006, except for periods from Sept. 1, 2001,
through Jan. 1, 2002, and from Dec. 1, 2003, through June 1,
2004.  We construe petitioner's petition as a request to review
respondent's determination not to abate interest for the same
(continued...)

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the supplemental stipulation of facts are incorporated herein by this reference. When he petitioned this Court, petitioner resided in Missouri, and his individual net worth did not exceed $2 million.

During 1996 and 1997 petitioner and his wife, Ann L. Bucaro (Mrs. Bucaro), were shareholders of Abrams-Condyne Corp.[4] (Abrams-Condyne), an S corporation. For 1996 and 1997 petitioner and his wife owned a 50-percent interest, and the Abrams Family Trust (trust), a grantor trust, owned the other 50-percent interest.[5] During 1996 and 1997 petitioner was also the sole shareholder of Condyne Corp. (Condyne), an S corporation. Condyne and Abrams-Condyne filed Forms 1120S, U.S. Income Tax Return for an S Corporation, and petitioner and Mrs. Bucaro filed joint Forms 1040, U.S. Individual Income Tax Return, for 1996 and 1997.

---

[3](...continued)
periods covered by the determination.

[4]The record reflects several slightly different spellings of the corporation's name. The differences, however, are minor and do not affect the outcome.

[5]The taxpayers who owned the trust wrote off the investment in Abrams-Condyne on their 1996 Federal income tax return. The record does not disclose why this occurred or how the writeoff affected the trust's status as a shareholder of Abrams-Condyne in 1997.

Respondent's Examination

Sometime in 1999 respondent selected Condyne's 1997 return for examination. Respondent notified Condyne in either late 1999 or early 2000 that its 1997 return had been selected for examination. Respondent selected Condyne's 1997 return at least in part because Condyne had claimed a $106,000 bad debt deduction with respect to loans it allegedly made to Abrams-Condyne. Respondent subsequently expanded his examination to include Condyne's 1996 and 1998 returns, Abrams-Condyne's 1996 and 1997 returns, which were not filed until August 3, 2000, and petitioner's 1996, 1997, and 1998 returns (collectively the examination). Petitioner was the principal contact with respondent regarding the examination.

From the inception of the examination in 1999 to and including August 24, 2001, Examining Officer Deborah Collins (EO Collins) and petitioner worked diligently on the examination. EO Collins and petitioner corresponded and met concerning questions EO Collins had about the returns under examination. The examination uncovered several issues on which EO Collins and petitioner disagreed, including the bad debt deduction that Condyne had claimed on its 1997 Form 1120S and various basis issues involving the corporations.

After respondent received Abrams-Condyne's delinquent returns on August 3, 2000, respondent assigned the examination of

the returns to EO Collins.  On August 17, 2000, respondent sent a notice of the beginning of administrative proceeding (NBAP) to Abrams-Condyne with respect to its 1996 year[6] pursuant to the S corporation audit provisions enacted as part of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, sec. 402(a), 96 Stat. 648.[7]  See sec. 6244 (repealed).

On September 26, 2000, EO Collins summoned bank statements for Abrams-Condyne.  She received the statements on October 17, 2000.

On November 17, 2000, EO Collins issued a Form 5701, Notice of Proposed Adjustment, proposing adjustments to Abrams-Condyne's 1996 and 1997 returns.  On December 21, 2000, petitioner met with EO Collins to discuss the proposed adjustments.  The following day EO Collins mailed petitioner three Letters 950(DO) with attached forms specifying the proposed examination changes for petitioner, Condyne, and Abrams-Condyne for 1996 and 1997 (collectively, 30-day letters).

---

[6]Sec. 6244, which made the TEFRA audit and litigation procedures applicable to S corporations, was repealed for years after Dec. 31, 1996.  Small Business Job Protection Act of 1996, Pub. L. 104-188, secs. 1307(c)(1), 1317(a), 110 Stat. 1781, 1787.

[7]During 1996 one of Abrams-Condyne's shareholders was a trust.  Under the TEFRA audit procedures then in effect, an S corporation with a trust as a shareholder could not qualify as a small S corporation that was not subject to the TEFRA audit rules.  See sec. 301.6241-1T(c)(2), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 3003 (Jan. 30, 1987).

By letter dated January 24, 2001, addressed to EO Collins, petitioner protested the adjustments in the 30-day letters and requested an Appeals Office conference.[8] From that date until the beginning of March 2001 petitioner and EO Collins continued to discuss the proposed adjustments and the proper tax treatment of various items reported on Abrams-Condyne's and Condyne's returns. Their principal disagreement involved Condyne's 1997 bad debt deduction and the proper tax treatment of various distributions. On March 5, 2001, petitioner proposed a settlement, which EO Collins rejected. On or about March 7, 2001, EO Collins closed the Abrams-Condyne case to her manager. On April 24, 2001, the manager returned the case to EO Collins for further work. The manager returned the Abrams-Condyne case to EO Collins at least in part because of questions regarding why the trust was not under examination. The manager asked EO Collins to obtain information relative to the trust. During May and June 2001 EO Collins obtained information regarding the trust and researched whether an assessment was time barred.

On July 3, 2001, EO Collins met with petitioner to discuss the examination and to secure assessment period extensions. During the rest of July EO Collins continued to work on the Abrams-Condyne case. On August 9, 2001, she prepared to close

---

[8]Petitioner apparently faxed a copy of the protest letter to EO Collins on Jan. 23, 2001.

the case,[9] and on August 24, 2001, case processing received the 1997 Abrams-Condyne case.

The record does not contain any indication that EO Collins and/or the Appeals Office actively worked on petitioner's case or the corporate cases from August 24, 2001, through and including January 7, 2002. Sometime during this period, however, on a date that does not appear in the record, the Abrams-Condyne case was returned to EO Collins.[10] From January 8 through October 10, 2002, EO Collins continued to work on the examination of, and

---

[9]The record contains conflicting information about respondent's adherence to the TEFRA audit procedures during the examination of Abrams-Condyne's returns. On the one hand, a timeline prepared by Examining Officer Marilyn Young (EO Young) in an effort to reconstruct what happened during the examination was admitted into evidence, and it indicates that on Aug. 17, 2000, respondent sent an NBAP to Abrams-Condyne with respect to its 1996 year. On the other hand, the timeline states that on July 3, 2001, "RA started TEFRA proceedings on 1996 case through PCS Coordinator on AC." From July 26, 2001, through Jan. 7, 2002, and from Jan. 9 through Apr. 2, 2002, the timeline identifies no meaningful activity with respect to Abrams-Condyne's 1996 year. On Apr. 3, 2002, EO Collins received a fax from the TEFRA coordinator regarding Abrams-Condyne's 1996 year. On Apr. 10, 2002, EO Collins sent a letter to Abrams-Condyne requesting that it designate a tax matters partner. On June 11, 2002, respondent issued a notice of final S corporation administrative adjustment (FSAA) with respect to Abrams-Condyne's 1996 return. Strangely, although Abrams-Condyne did not file a petition in response to the FSAA and the FSAA defaulted, respondent did not process the adjustments in the FSAA, and on June 23, 2003, the TEFRA unit closed the 1996 Abrams-Condyne case as a "no change".

[10]EO Collins' case activity history with respect to Abrams-Condyne that is in the record ends with her entry for Aug. 9, 2001. Her case activity histories with respect to petitioner and Condyne are not in the record.

communicated with the TEFRA coordinator regarding the examination of, Abrams-Condyne's 1996 year. On or about April 12, 2002, EO Collins issued a revised 30-day letter to Abrams-Condyne for 1996 and 1997. Petitioner did not agree with the adjustments in the revised 30-day letter. In or around June 2002 EO Collins prepared the Abrams-Condyne case for transmittal presumably to respondent's case processing section and Appeals Office. However, sometime before September 1, 2002, the case was selected for quality review. The review process identified inconsistencies in the adjustments to Abrams-Condyne's, Condyne's, and petitioner's returns, and on September 1, 2002, the cases were returned to EO Collins for additional work. After EO Collins resolved the inconsistencies, she transferred all of the case files on October 10, 2002, in anticipation of Appeals Office review.

Appeals Office's Consideration of Examination

On October 16, 2002, the Appeals Office received some or all of the case files,[11] and on or about November 18, 2002, petitioner's appeal was assigned to Appeals Officer Douglas Wilke (AO Wilke). According to AO Wilke's case activity record,[12] on

---

[11]The record does not disclose whether the Appeals Office received petitioner's and Condyne's files on Oct. 16, 2002.

[12]As directed by the Court at trial, the record was supplemented to include the Appeals Office's case activity report regarding petitioner's appeal. The report contains entries by

(continued...)

November 26 and December 2, 2002, he reviewed the files for petitioner's appeal. On December 12, 2002, he prepared and mailed to petitioner consents to extend the period of limitations on assessment.

From January 1 through and including November 10, 2003, and from November 19, 2003, through and including June 3, 2004, AO Wilke made no case activity entries with respect to the appeal, and there is no evidence in the record to show what, if anything, AO Wilke did in connection with petitioner's appeal during those periods. In fact, the Appeals Office case activity history does not show that AO Wilke did anything with the appeal from December 14, 2002, to June 10, 2004, when the appeal was reassigned, other than process consents to extend the period for assessment.[13]

On June 23, 2003, respondent's TEFRA unit closed the Abrams-Condyne case without change. The record does not disclose the reasons for this action.

_____

[12](...continued)
both AO Wilke and Appeals Officer Kevin McGrath (AO McGrath).

[13]On Nov. 10, 2003, AO Wilke prepared and mailed to petitioner additional consents to extend the period of limitations on assessment. On Nov. 19, 2003, he received the signed consents from petitioner. On Nov. 24, 2003, AO Wilke mailed the executed consents to petitioner. On June 4, 2004, AO Wilke again prepared and mailed consents to extend the period of limitations on assessment.

On June 10, 2004, petitioner's appeal was transferred from AO Wilke to AO McGrath. During June and early July 2004 AO McGrath reviewed petitioner's appeal. During July and August 2004 petitioner's accountant and AO McGrath discussed a settlement. After exchanging settlement proposals petitioner and AO McGrath reached a settlement agreement in approximately September 2004. Petitioner executed a Form 870-AD, Offer to Waive Restrictions on Assessment and Collection of Tax Deficiency and to Accept Overassessment, in which petitioner agreed to deficiencies of $14,046 and $7,895 for 1996 and 1997, respectively. On October 25, 2004, respondent assessed the 1996 and 1997 deficiencies and interest. On or about January 20, 2005, petitioner paid the full amount of the deficiencies but not the interest.

Request for Abatement

On or about January 8, 2005, petitioner submitted a Form 843, Claim for Refund and Request for Abatement, for each of the years 1996 and 1997, in which he requested an abatement or refund of interest as a result of IRS errors or delay. Petitioner attached a statement to the Forms 843 explaining that he was requesting abatement in full of all interest and penalties with respect to 1996 and 1997 "for the period April 1, 2000, through September 30, 2004" because of substantial errors and delays in handling his examination and related appeal.

On August 18, 2005, petitioner sent a letter to respondent inquiring into the status of his abatement request. Because petitioner did not receive a reply to his August 18, 2005, letter, on October 21, 2005, he telephoned the IRS Taxpayer Advocate Service. After speaking with a representative, he mailed her copies of his abatement request. From January 8, 2005, when petitioner submitted his abatement request to respondent, until February 17, 2006, the record is silent as to what, if any, action respondent took to address petitioner's abatement request.

On February 17, 2006, petitioner's abatement request was assigned to Marilyn Young, Interest Abatement Coordinator, in Indianapolis, Indiana. Over the next 3 months Ms. Young reviewed the history of the examination of the returns for petitioner, Condyne, and Abrams-Condyne and the related appeal and settlement. After trying to reconstruct what transpired during the examination and appeal Ms. Young prepared a timeline and narrative that described her reconstruction of the examination, appeal, and settlement history.[14]

---

[14]According to the timeline, on Jan. 23, 2003, AO Wilke mailed to petitioner a consent to extend the period of limitations on assessment for Abrams-Condyne's 1996 return and discussed petitioner's appeal with a territory manager and a TEFRA coordinator. Her timeline and the narrative also reflect that on Feb. 26, 2003, AO Wilke received the signed consent, and 2 days later he mailed petitioner an executed copy. Ms. Young's reconstruction of the events includes a statement that on June

(continued...)

On May 16, 2006, respondent issued Letter 2290 to petitioner abating interest from September 1, 2001, through January 1, 2002, and from December 1, 2003, through June 1, 2004, and denying abatement for the remainder of the period considered (April 1, 2000, through September 30, 2004).  In the attachment to Letter 2290 Ms. Young explained that she allowed partial abatement of interest because she found there was no indication respondent's employees took any action on petitioner's case during these periods.

Appeals Office's Consideration of Abatement Request

On June 8, 2006, petitioner sent respondent a letter seeking Appeals Office review of respondent's partial denial of his abatement request.  In his appeal he sought complete relief from all interest accruing from April 1, 2000, through September 30, 2004, and asserted that respondent took an unreasonable amount of time to consider his abatement request.  On June 27, 2006, the

---

[14](...continued)
23, 2003, the "TEFRA unit closed the 1996 * * * [Abrams-Condyne] case as a 'no change'".  Her reconstruction also states that on July 24, 2003, AO Wilke wrote a memorandum to the file regarding the 1997 Abrams-Condyne examination, and on Nov. 17, 2003, he wrote a memorandum concerning the resolution of the 1996 Abrams-Condyne TEFRA proceeding.  The Appeals Office case history does not contain entries by AO Wilke to support all of the timeline entries described above.  We decline to find as facts entries in the timeline that are not supported by entries in the Appeals Office case history.

Appeals Office mailed petitioner a letter acknowledging receipt of his appeal.

On February 14, 2007, respondent issued a notice of determination disallowing petitioner's request for an additional abatement of interest with respect to 1996 and 1997. The period covered by the notice of determination was April 1, 2000, through May 16, 2006, the date on which respondent issued Letter 2290. In an attachment to the notice of determination Appeals Officer Nelson (AO Nelson) stated that after considering litigation hazards,[15] he agreed with Ms. Young's determination to abate interest that accrued from September 1, 2001, through January 1, 2002, and from December 1, 2003, through June 1, 2004, for 1996 and 1997. He also concluded that petitioner's abatement request in all other respects should be denied because petitioner's argument ignored the requirements imposed for interest abatement by applicable regulations, and petitioner had not identified any proper basis for abating interest. The attachment to the notice of determination did not contain any explanation of respondent's

---

[15]AO Nelson reasoned that the absence of activity from Sept. 1, 2001, through Jan. 1, 2002, was probably because of respondent's failure to perform a ministerial task. He agreed that abatement of interest was warranted from Dec. 1, 2003, through June 1, 2004, because there could have been a managerial delay during that time. AO Nelson acknowledged that he could only speculate as to what transpired during those periods because the record was silent. Ultimately, he concluded that since respondent could not account for his actions during these periods, it would be difficult for respondent to defend a decision not to abate interest.

determination not to abate interest for the period from the submission of petitioner's abatement request on January 8, 2005, through May 16, 2006.

Subsequent Payments and Litigation

In April and June 2007 petitioner made additional payments that fully satisfied his 1996 and 1997 tax liabilities. Petitioner also petitioned this Court to review respondent's determination, using Tax Court Form 2 (May 2003). In his petition, petitioner stated that he "disagree(s) with the determination contained in the notice issued by the Internal Revenue Service for the year(s) or period(s) 12/1996 and 12/1997, as set forth in such notice dated February 14, 2007". In the section of the petition form that directs the taxpayer to set forth the relief requested and the reasons the taxpayer believes he is entitled to such relief, petitioner stated the following:

> This request for abatement of interest results from an audit that was initiated on January 10, 2000 for tax years 1996 and 1997. I responded timely with requested information and had two meetings with the examiner by the middle of March 2000. From that time forward, through the end of September 2004, the IRS was responsible for a series of delays and errors in resolving this matter. Ultimately, after more than four years, the IRS in essence accepted the proposal I had originally made in March of 2000. Accordingly, in accordance with Section 6404(e) of the IRS Code, I am requesting that all interest and penalties be abated for the period April 1, 2000 through September 30, 2004 for the following reasons:  1) Excessive managerial delays in reporting the audit results, 2) Substantial managerial errors in reporting the results of audit meetings between the examiner and me, and 3) Excessive managerial delays in addressing my appeal.

We conducted a trial in which both parties participated. Although petitioner, who was not represented by counsel, testified, his testimony was not particularly informative about what transpired during the period covered by the notice of determination--April 1, 2000, through May 16, 2006.  However, the parties stipulated, among other things, to documents that covered the entire period addressed in the notice of determination--April 1, 2000, through May 16, 2006.

OPINION

A. Interest Abatement in General

For tax years beginning before July 31, 1996, section 6404(e) provided in pertinent part as follows:

> SEC. 6404(e).  Assessments of Interest Attributable to Errors and Delays by Internal Revenue Service.--
>
> (1) In general.--In the case of any assessment of interest on--
>
> (A) any deficiency attributable in whole or in part to any error or delay by an officer or employee of the Internal Revenue Service (acting in his official capacity) in performing a ministerial act, or
>
> (B) any payment of any tax described in section 6212(a) to the extent that any error or delay in such payment is attributable to such officer or employee being erroneous or dilatory in performing a ministerial act,
>
> the Secretary may abate the assessment of all or any part of such interest for any period.  For purposes of the preceding sentence, an error or delay shall be taken into account only if no significant aspect of such error or delay can be

attributed to the taxpayer involved, and after the Internal Revenue Service has contacted the taxpayer in writing with respect to such deficiency or payment.

In 1996 Congress amended section 6404(e) to read in pertinent part as follows:

SEC. 6404(e). Abatement of Interest Attributable to Unreasonable Errors and Delays by Internal Revenue Service.--

(1) In general.--In the case of any assessment of interest on--

(A) any deficiency attributable in whole or in part to any unreasonable error or delay by an officer or employee of the Internal Revenue Service (acting in his official capacity) in performing a ministerial or managerial act, or

(B) any payment of any tax described in section 6212(a) to the extent that any unreasonable error or delay in such payment is attributable to such officer or employee being erroneous or dilatory in performing a ministerial or managerial act,

the Secretary may abate the assessment of all or any part of such interest for any period. For purposes of the preceding sentence, an error or delay shall be taken into account only if no significant aspect of such error or delay can be attributed to the taxpayer involved, and after the Internal Revenue Service has contacted the taxpayer in writing with respect to such deficiency or payment.

Taxpayer Bill of Rights 2 (TBOR 2), Pub. L. 104-168, sec. 301(a), 110 Stat. 1457 (1996). Current section 6404(e) applies to deficiencies or payments for tax years beginning after July 30, 1996. TBOR 2 sec. 301(c), 110 Stat. 1457. Former section

6404(e)(1) applies to petitioner's abatement request for 1996. Current section 6404(e)(1) applies to petitioner's abatement request for 1997.

Under both former section 6404(e) and current section 6404(e), a "ministerial act" is a procedural or mechanical act that does not involve the exercise of judgment or discretion by the Commissioner.  Sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987); sec. 301.6404-2(b)(2), Proced. & Admin. Regs.  Under current section 6404(e), a "managerial act" means an administrative act that involves a temporary or permanent loss of records or the exercise of judgment or discretion relating to personnel management during the processing of a taxpayer's case.  Sec. 301.6404-2(b)(1), Proced. & Admin. Regs.  In contrast, a decision concerning the proper application of Federal tax law, or other Federal or State laws, to the facts and circumstances surrounding a taxpayer's tax liability is not a ministerial or managerial act.  Sec. 301.6404-2(b), Proced. & Admin. Regs.

When Congress first enacted section 6404(e) as part of the Tax Reform Act of 1986, Pub. L. 99-514, sec. 1563(a), 100 Stat. 2762, it did not intend the provision to be used routinely to avoid payment of interest.  Rather, Congress intended abatement of interest only where failure to do so "would be widely perceived as grossly unfair."  H. Rept. 99-426, at 844 (1985),

1986-3 C.B. (Vol. 2) 1, 844; S. Rept. 99-313, at 208 (1986), 1986-3 C.B. (Vol. 3) 1, 208.  Section 6404(e) affords a taxpayer relief only if no significant aspect of the error or delay can be attributed to the taxpayer and only after the Commissioner has contacted the taxpayer in writing about the deficiency or payment in question.  See H. Rept. 99-426, supra at 844, 1986-3 C.B. (Vol. 2) at 844 ("This provision does not therefore permit the abatement of interest for the period of time between the date the taxpayer files a return and the date the IRS commences an audit, regardless of the length of that time period.").

The Commissioner's authority to abate an assessment of interest involves the exercise of discretion, and we must give due deference to the Commissioner's exercise of discretion. Woodral v. Commissioner, 112 T.C. 19, 23 (1999); Mailman v. Commissioner, 91 T.C. 1079, 1082 (1988).  To prevail, a taxpayer must prove that the Commissioner abused his discretion by exercising it arbitrarily, capriciously, or without sound basis in fact or law.  Woodral v. Commissioner, supra at 23; Mailman v. Commissioner, supra at 1084; see also sec. 6404(h)(1); Rule 142(a).  The mere passage of time does not establish error or delay in performing a ministerial or managerial act.  See Cosgriff v. Commissioner, T.C. Memo. 2000-241 (citing Lee v. Commissioner, 113 T.C. 145, 150 (1999)).  However, "The Commissioner is in the best position to know what actions were

taken by IRS officers and employees during the period for which
* * * [an] abatement request was made and during any subsequent
inquiry based upon that request." Jacobs v. Commissioner, T.C.
Memo. 2000-123. Where the administrative record is silent
regarding the actions taken on a taxpayer's matter and the
Commissioner does not come forth with evidence to show that the
employees assigned to the matter or involved in its review were
actively working on it, there may be no apparent basis to support
the Commissioner's determination not to abate interest, and the
unsupported determination may constitute an abuse of discretion.
Id.

B. Jurisdiction

We have exclusive jurisdiction under section 6404(h)(1) to
review the Commissioner's denial of a taxpayer's interest
abatement request and to order an abatement where an abuse of
discretion has occurred. Hinck v. United States, 550 U.S. 501,
503 (2007). Petitioner established that he met the requirements
of section 6404(h)(1); therefore, we have jurisdiction to review
respondent's determination.

Before filing his petition, petitioner paid all of his
outstanding 1996 and 1997 tax liabilities, including interest.
As a result, petitioner's petition in effect asserts a request

for a refund of interest that he overpaid.[16]  In cases involving a review of the Commissioner's determination to deny interest abatement in whole or in part, our jurisdiction to review the interest abatement determination includes the authority to order a refund in appropriate circumstances.  See Hinck v. United States, supra at 509 ("No one doubts" the Tax Court may review abatement of interest claims where the interest has been paid); Greene-Thapedi v. Commissioner, 126 T.C. 1, 12-13 (2006).

C.  Scope of Our Review

The parties stipulated relevant portions of the administrative record, including petitioner's interest abatement request, a letter complaining about respondent's delay in acting on the interest abatement request, and the notice of determination.  The stipulated record raises an initial issue regarding the nature and extent of petitioner's abatement claim and respondent's determination, and the scope of our review under section 6404(h).

In his initial interest abatement request petitioner requested that interest be abated for 1996 and 1997 as a result of IRS errors or delays.  In an attachment to the request, petitioner stated that he was requesting abatement of all

---

[16]According to respondent's records, on Oct. 25, 2004, respondent assessed $9,860 and $4,391 in interest for 1996 and 1997, respectively.  The records also establish that by June 11, 2007, petitioner had fully paid the 1996 and 1997 liabilities, including assessed interest.

interest for the period April 1, 2000, through September 30, 2004.  After the IRS issued Letter 2290 to petitioner on May 16, 2006, petitioner appealed the partial denial of his abatement request to the Appeals Office.  In his letter to the Appeals Office petitioner asserted that respondent had taken an unreasonable amount of time to consider his abatement request. The Appeals Office treated the letter as a supplement to petitioner's abatement request, and in a notice of determination dated February 14, 2007, the Appeals Office denied an interest abatement for the period from April 1, 2000, through May 16, 2006, the date on which respondent issued Letter 2290.

Petitioner petitioned this Court to review respondent's determination.  In his petition he stated that he "[disagrees] with the determination contained in the notice issued by the Internal Revenue Service for the year(s) or period(s) 12/1996 and 12/1997, as set forth in such notice dated February 14, 2007." We construe petitioner's petition to request a review of the entire period covered by the notice of determination issued by the Appeals Office, and we shall review respondent's determination accordingly.

D.  Petitioner's Arguments

Petitioner asserts that for the periods for which respondent abated interest, respondent's employees were not achieving any results; consequently, respondent's determination to abate

interest was an admission that respondent was untimely in conducting his examination and Appeals Office review. Petitioner argues that, by granting his abatement request in part, respondent has established untimeliness as a new criteria for relief under section 6404(e).

Petitioner also asserts that because respondent's entire examination, and not just the periods for which abatement has already been allowed, was not productive,[17] abatement is appropriate for the entire period covered by the abatement request. Petitioner argues that, because the entire examination was unproductive, respondent's failure to abate interest for the entire period is "grossly unfair" and would run afoul of Congress' intent that grossly unfair interest be abated.

Petitioner's general arguments regarding the unproductivity and unfairness of the examination and administrative appeal processes are not persuasive for several reasons. First, petitioner misconstrues respondent's determination. AO Nelson abated interest that accrued from September 1, 2001, through January 1, 2002, and from December 1, 2003, through June 1, 2004, because the administrative record did not indicate what actions, if any, respondent's employees took during these periods.

---

[17]Although it is not entirely clear what petitioner means when he uses the terms "productive" and "unproductive" with respect to the examination and administrative appeal, we construe his use of the terms to refer to the quantity and quality of the final adjustments resulting therefrom.

Respondent acknowledged that he could not explain what occurred during these periods and that a decision not to abate interest would be unsupportable. The partial abatement is not an admission that the examination and Appeals process was unproductive. Second, the determination regarding abatement of interest does not depend upon or require an examination of the results of an examination. See, e.g., Howell v. Commissioner, T.C. Memo. 2007-204; Mekulsia v. Commissioner, T.C. Memo. 2003-138, affd. 389 F.3d 601 (6th Cir. 2004); Scott v. Commissioner, T.C. Memo. 2000-369. Third, even if lack of productivity were a proper basis to abate interest under section 6404(e), petitioner has not proven that the examination was unproductive. The record shows that petitioner and respondent discussed multiple issues throughout the examination. Some issues were resolved in petitioner's favor, and others were not. Petitioner ultimately agreed to income tax deficiencies for both 1996 and 1997.

In reviewing whether respondent's determination was an abuse of discretion, we must decide with respect to petitioner's 1996 return whether respondent erred or delayed in performing a ministerial act, and with respect to petitioner's 1997 return, whether respondent unreasonably erred or delayed in performing a ministerial or managerial act.[18] We cannot properly analyze and

---

[18]Respondent does not assert, nor does the record establish, that petitioner contributed to an error or delay or that
(continued...)

decide these issues without taking into account the examinations that respondent conducted of Condyne and Abrams-Condyne because petitioner was required to report his distributive share of the S corporations' profit or loss during 1996 and 1997, and petitioner's examination and appeal could not be resolved until the examinations of the two S corporations were resolved. We shall segment our analysis into the relevant periods.

1. April 1, 2000, Through August 31, 2001

The record reveals that from April 1, 2000, through August 31, 2001, EO Collins steadily and continuously worked on the examination of petitioner's, Condyne's, and Abrams-Condyne's returns. EO Collins began her examination of Condyne's returns sometime before April 1, 2000. She began examining petitioner's returns in March 2000, and in August 2000 the examination expanded to include Abrams-Condyne's 1996 and 1997 returns, which respondent did not receive until August 3, 2000. Throughout this period, EO Collins worked diligently on the examination and communicated regularly with petitioner about it.

The record as summarized reveals that both parties were actively working on some part of the examination during this period. Other than general arguments about lack of productivity, petitioner has not identified any dilatory or unreasonable

---

[18](...continued)
petitioner seeks an abatement of interest that accrued before respondent contacted him in writing.

failure to perform a managerial or ministerial act, and we have found none.  The record for this period does not reveal any significant gaps of time during which respondent's employees took no action whatsoever, nor is the record silent with respect to the examination activity that occurred.  Accordingly, we hold that respondent did not abuse his discretion in refusing to abate interest from April 1, 2000, through August 31, 2001, with respect to petitioner's 1996 and 1997 Federal income tax liabilities.

2.  <u>January 2 Through December 31, 2002</u>

Respondent abated interest from September 1, 2001, through and including January 1, 2002, because there was no record of activity on the examination during that period of time.  Although that part of respondent's determination is not before us, it is part of the continuum that we review to understand how the examination and administrative appeal progressed.

The record does not show any activity by respondent's employees on the examination during the period from January 2 through and including January 7, 2002.  Respondent has not introduced any evidence to explain what occurred during the period from January 2 through and including January 7, 2002, and we cannot ascertain any reason for respondent's decision not to abate interest for this period as well.  Absent some explanation supported by evidence in the record explaining how and why

respondent exercised his discretion the way that he did, we must conclude that respondent's determination not to abate interest from January 2 through and including January 7, 2002, was an abuse of discretion. See Jacobs v. Commissioner, T.C. Memo. 2000-123.

On a date that does not appear in the record but was sometime on or about January 8, 2002, the Abrams-Condyne case was returned to EO Collins. The record, while sparse, indicates that EO Collins continued to work on the examination from January 8, 2002, through June 2002 when EO Collins prepared the Abrams-Condyne case and possibly the other cases as well for transmittal to the Appeals Office. Sometime before September 1, 2002, the case was selected for quality review. The review identified inconsistencies, and the case was returned to EO Collins again. On October 10, 2002, EO Collins transferred the examination files for transmittal to the Appeals Office.

We cannot identify any failure to perform a ministerial or managerial act during this period that would support additional interest abatement. Although the progress of the examination appears to have been impaired by quality issues that required the case files to be returned to EO Collins on two separate occasions, we do not read section 6404 to permit abatement simply because the reviewing agent may have made a mistake in analyzing or applying relevant law. The record adequately demonstrates

that EO Collins continued to work on the examination with petitioner until she transferred the examination files to the Appeals Office in October 2002.  Once the Appeals Office received petitioner's appeal, it promptly processed the appeal and assigned the appeal to AO Wilke, who did a small amount of work reviewing the case files and processing consents during November and December 2002.

Petitioner has not identified any delay or error by respondent in performing a ministerial or managerial act from January 8 through December 31, 2002, and on the basis of the record, we have found none.  Accordingly, we conclude that respondent's determination not to abate interest for this period was not an abuse of discretion.

3.  <u>January 1 Through November 30, 2003</u>

From January 1 through and including November 10, 2003, and from November 19, 2003, through and including June 3, 2004, AO Wilke made no case activity entries with respect to petitioner's appeal.  Although the parties stipulated that AO Wilke processed consents on November 10, November 19, and November 24, 2003, those are the only actions taken by AO Wilke with respect to the appeal during this period until June 4, 2004, when he again prepared and mailed consents to petitioner.  At best, the record is silent as to whether AO Wilke performed even the most basic of ministerial acts to move the appeal forward, such as scheduling

an Appeals conference.  At worst, the record reflects that AO Wilke did nothing more than process consents during this period.[19]

Respondent abated interest from December 1, 2003, through and including June 1, 2004, because he could not identify any action taken by the Appeals Office on petitioner's appeal during that period.  However, respondent did not abate interest for January 1 through November 30, 2003, presumably because AO Wilke processed some consent paperwork during that period.  The explanation offered by respondent for his refusal to abate interest is general and uninformative and fails to discuss why AO Wilke never performed the ministerial act of scheduling an Appeals conference.

An agency must cogently articulate the rationale for exercising its discretion in a particular manner.  South Dakota v. U.S. Dept. of Interior, 423 F.3d 790, 799-800 (8th Cir. 2005).  Respondent is in the best position to explain what actions AO

---

[19]At trial we asked respondent's counsel to supplement the record by providing the Appeals Office case activity record with respect to petitioner's appeal.  The case activity record was subsequently stipulated as an exhibit.  Our review of the case activity record reveals that it is not consistent in all respects with the timeline prepared by EO Young.  We place greater reliance on the case activity record because it is a contemporaneous business record and not a reconstruction.  See United States v. Naiden, 424 F.3d 718, 722-723 (8th Cir. 2005); Estate of Freedman v. Commissioner, T.C. Memo. 2007-61; Contl. Grain Co. v. Commissioner, T.C. Memo. 1988-577 n.5 (contemporaneous documents and statements are generally more reliable than those prepared or made later).

Wilke took or did not take from January 1 to November 30, 2003. Respondent either could not or did not offer evidence to explain AO Wilke's failure to schedule an Appeals conference or to take meaningful action to move the appeal forward, and we may infer from this lack of information in the record that respondent's decision not to abate interest was an abuse of discretion. See Dadian v. Commissioner, T.C. Memo. 2004-121; Jacobs v. Commissioner, T.C. Memo. 2000-123. Because the record fails to explain why AO Wilke failed to perform the ministerial act of scheduling an Appeals conference in petitioner's appeal from January 1 through November 30, 2003, we hold that respondent abused his discretion by refusing to abate interest for that period.

4. June 2, 2004, Through January 7, 2005

Respondent does not explain why he abated interest only from December 1, 2003, to and including June 1, 2004. AO Wilke's inaction on petitioner's appeal continued until June 10, 2004, when the appeal was reassigned to AO McGrath.

Once the appeal was reassigned to AO McGrath the parties made rapid progress in resolving all outstanding issues. AO McGrath met and discussed the unagreed examination issues with petitioner and his accountant, and the parties reached a basis of

settlement in September 2004.[20] After petitioner and respondent finalized the settlement and executed a Form 870-AD, respondent promptly assessed the 1996 and 1997 deficiencies on October 25, 2004. After respondent assessed the 1996 and 1997 deficiencies and mailed appropriate notices of balance due, respondent had no obligation to perform any actions until petitioner submitted his abatement request on January 8, 2005.

Except for the period from June 2 to June 9, 2004, petitioner has not identified any delay or error in performing a ministerial or managerial act after the appeal was reassigned to AO McGrath on June 10, 2004, and the record does not disclose any. We hold that respondent abused his discretion in refusing to abate interest from June 2 to June 9, 2004, and we sustain respondent's determination denying petitioner's request for abatement with respect to the rest of the period.

5. <u>January 8, 2005, Through May 16, 2006</u>

On January 8, 2005, petitioner filed his abatement request with respondent. From January 8, 2005, until February 17, 2006, the record is silent as to what, if any, action respondent took to address petitioner's abatement request. It does not appear that respondent took any action with respect to the abatement request before assigning the request to EO Young.

---

[20]AO McGrath informed petitioner that petitioner could file a request to abate interest but that AO McGrath could not abate interest as part of the pending Appeals Office review.

From February 17 when petitioner's abatement request was assigned to EO Young to May 16, 2006, EO Young consistently and diligently worked on petitioner's abatement request. On May 16, 2006, respondent sent petitioner his preliminary determination to abate interest from September 1, 2001, through January 1, 2002, and from December 1, 2003, through June 1, 2004, only and to deny it for all other periods.

The record documents EO Young's diligent attention to and work on petitioner's abatement request but does not contain any credible evidence to explain the complete institutional silence from January 8, 2005, when petitioner filed his abatement request, to February 17, 2006, when respondent finally assigned the request to EO Young.

Absent evidence that explains why respondent refused to abate interest from January 8, 2005, through February 16, 2006, we can conclude only that respondent abused his discretion in refusing to abate interest for that period. Respondent was in a position to explain what actions he took, if any, but respondent did not do so. See Jacobs v. Commissioner, supra. Accordingly, we conclude that respondent's decision not to abate interest from January 8, 2005, through February 16, 2006, was an abuse of discretion. We sustain respondent's determination as to the remainder of the period.

E. <u>Conclusion</u>

The record shows extended periods during which certain ministerial actions should have taken place but did not.  The record also shows extended periods when respondent's employees did not take any action whatsoever.  For some of those periods respondent has not offered any explanation for the inactivity or the failure to perform the ministerial acts.  We conclude, therefore, that respondent abused his discretion in refusing to abate interest for the following periods:  January 2 through and including January 7, 2002; January 1 through and including November 30, 2003; June 2 through and including June 9, 2004; and January 8, 2005, through and including February 16, 2006.  We sustain respondent's determination in all other respects.

We have considered the remaining arguments made by the parties and to the extent not discussed above, conclude those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered under Rule 155</u>.