T.C. Memo. 2010-131


UNITED STATES TAX COURT


GARY W. SWANSON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 20151-07.                    Filed June 15, 2010.


<u>Vivian D. Hoard</u>, for petitioner.

<u>Brenda M. Fitzgerald</u>, for respondent.


MEMORANDUM OPINION


JACOBS, <u>Judge</u>:  The parties submitted this case fully

stipulated pursuant to Rule 122.  The issue for decision is

whether respondent's denial of petitioner's claim for abatement

of interest with respect to his income tax liability for 1983 was an abuse of discretion. We hold that it was not.[1]

All Rule references are to the Tax Court Rules of Practice and Procedure, and unless otherwise indicated, all section references are to the Internal Revenue Code.

## Background

We adopt as findings of fact all statements contained in the stipulation of facts. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioner resided in Georgia when he filed his petition.

In 1983 petitioner held a limited partner interest in California Jojoba Investors (CJI). After examination, respondent disallowed certain deductions claimed by the partnership. Pursuant to the provisions of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub. L. 97-248, sec. 402(a), 96 Stat. 648, a notice of final partnership administrative adjustment (FPAA) was issued to CJI for 1983 on or about October 3, 1991. In response to the FPAA, on December 23, 1991, CJI timely petitioned this Court contesting the proposed adjustments. Cal. Jojoba Investors v. Commissioner, docket No. 29993-91 (Cal. Jojoba).

---

[1]Petitioner previously petitioned this Court in docket No. 14032-06 to review respondent's determination that he was liable for additions to tax under sec. 6653(a)(1) and (2) for 1983. That matter was resolved in Swanson v. Commissioner, T.C. Memo. 2009-31.

On November 1, 1993, the parties in Cal. Jojoba filed a stipulation to be bound in which each agreed that the outcome of Cal. Jojoba would be determined by the result reached in Utah Jojoba I Research v. Commissioner, docket No. 7619-90 (Utah Jojoba I).  The terms of the stipulation to be bound pertinent hereto provided:

1.  THE ABOVE ADJUSTMENTS ARE THE ONLY ISSUES IN THIS CASE.

    A.  UPON RESOLUTION OF THESE ISSUES, A PROPOSED
    DECISION WILL BE PREPARED BY RESPONDENT'S COUNSEL.

    *     *     *     *     *     *     *

5.  A decision shall be submitted in this case when the decision in the CONTROLLING CASE (whether litigated or settled) becomes final under I.R.C. Sec. 7481

6.  If the CONTROLLING CASE is appealed, the partners in the California Jojoba Investors partnership consent to the assessment and collection of the respective deficiencies attributable to the partnership item adjustments, formulated by reference to the Tax Court's opinion, notwithstanding the restrictions under I.R.C. Sec. 6225

    *     *     *     *     *     *     *

10.  This stipulation is not a settlement agreement for purposes of I.R.C. §§ 6224(c)(3) and 6231(b)(1)(C).

The stipulation to be bound allowed for the imposition of section 6621(c) tax-motivated interest:

3.  All issues involving the above adjustments shall be resolved as if the partnership in this case was the same as the partnership in the CONTROLLING CASE;

    A.  If the Court makes findings of underlying facts
    with respect to tax motivated transactions, a valuation
    overstatement, or other elements applicable to a
    determination of additions to tax and/or section
    6621(c) interest, which are attributable to the above-

> designated partnership item adjustments, the findings of fact in the CONTROLLING CASE shall apply to the partners in the California Jojoba Investors partnership as if the partnership in this case was the same as the partnership in the CONTROLLING CASE

Petitioner did not enter into a closing agreement or any other settlement agreement with respondent.

On January 5, 1998, in Utah Jojoba I Research v. Commissioner, T.C. Memo. 1998-6, the Court sustained respondent's adjustments. Decision was entered on January 8, 1998, and became final on April 8, 1998, no appeal having been filed. See sec. 7483.

Resolution of Cal. Jojoba was delayed because the tax matters partner (TMP) of CJI refused to cooperate, and consequently no decision document could be entered. On January 22, 1999, we ordered counsel for the partnership and respondent to either (1) arrange with the TMP to execute a stipulation for decision consistent with the stipulation to be bound or (2) file status reports explaining why the TMP could not be contacted, with a deadline of February 17, 1999. We ordered that if the parties were unable to convince the TMP to execute the stipulation for decision, respondent would submit, on or before February 24, 1999, a motion to appoint a new TMP, explaining the reasons for seeking a new TMP and suggesting the name of a new TMP.

On February 18, 1999, respondent filed a status report with the Court stating that the TMP refused to sign the stipulation for decision or otherwise perform his duties.[2] The report stated that respondent was prepared to enforce the stipulation to be bound. Thereafter, on February 25, 1999, respondent filed a motion for entry of decision or [to] appoint a tax matters partner. Attached to respondent's motion was a list of the partners of CJI, including petitioner. Respondent noted in his motion that all of the listed partners had been served with the motion.

On August 4, 1999, counsel for the partnership sent a notice to the partners of CJI which (1) informed the partners that respondent had disallowed all deductions for 1983, (2) provided the partners with information to contact the representative of respondent who was managing the matter, and (3) informed them that the TMP had abdicated his role.

The record does not indicate that any other action occurred until February 1, 2005, when the Court issued an order directing the partners of CJI to show cause why respondent's motion for entry of decision should not be granted. The order was mailed to the last known addresses of all known partners.

---

[2]The TMP did not follow the applicable procedures to withdraw as TMP. He simply refused to cooperate.

On February 10, 2005, respondent provided the Court with an updated list of the addresses of all partners of CJI, including petitioner at his address in Georgia.  On February 15, 2005, the Court issued an order in which the Clerk of Court was directed to serve another copy of the Court's February 1, 2005, show cause order on all partners at their updated addresses.

On April 11, 2005, the Court entered an order and decision in which the order to show cause was made absolute and respondent's motion for entry of decision was granted.  That order and decision stated that the partnership item adjustments, as determined and set forth in the FPAA, were sustained.  The order and decision was served on all known partners, including petitioner.  On July 10, 2005, the decision in the partnership proceeding became final, 90 days after the order and decision was entered.  On July 25, 2005, pursuant to respondent's standard procedure, respondent's counsel transferred the case administrative file for processing to respondent's Appeals Office along with a copy of our decision.  See Internal Revenue Manual pt. 35.9.3.3 (Aug. 11, 2004).

At the time the case administrative file was transferred, a number of TEFRA proceedings related to partnerships tied to the Utah Jojoba I matter were in process, which delayed the processing of the case.  A "TEFRA Closing Package" was ultimately prepared, and on February 6, 2006, the package was given to an

Internal Revenue Service supervisor for review. After review, on February 8, 2006, the TEFRA Closing Package was sent to respondent's Brookhaven processing center for issuance of the affected items notices to the partners of CJI.

On April 13, 2006, respondent sent petitioner a letter with which was enclosed a Form 4549-A, Income Tax Discrepancy Adjustments, and computations relevant to adjustments made to petitioner's 1983 Federal income tax return as a result of petitioner's investment in CJI. As part of the tax calculation, respondent determined that all or part of the underpayment of tax petitioner was required to report on his 1983 Federal income tax return was a substantial underpayment attributable to tax-motivated transactions. Therefore, pursuant to section 6621(c)(1), the annual interest rate applied to the underpayment of tax was 120 percent of the normal interest rate. On April 17, 2006, respondent timely issued a notice of deficiency to petitioner with respect to his 1983 tax year.

Petitioner timely filed a petition with the Court,[3] and as petitioner's deficiency case went forward, on June 9, 2006, petitioner's representative sent a letter to respondent requesting an abatement of all interest accrued for the period December 31, 1983, to May 1, 2006. Attached to the letter was a

---

[3]The matter was decided in Swanson v. Commissioner, T.C. Memo. 2009-31. See note 1.

Form 843, Claim for Refund and Request for Abatement. By letter dated July 10, 2006, respondent denied petitioner's request. The denial was based on respondent's determination that there was no error or delay caused by respondent in the performance of a ministerial act. On July 13, 2006, petitioner appealed the disallowance of his interest abatement request to respondent's Appeals Office. On March 15, 2007, respondent sent petitioner a Full Disallowance--Final Determination notice disallowing petitioner's abatement request. In determining that there were no errors or delays on respondent's part that merited the abatement of interest, respondent informed petitioner: "We did not find any errors or delays on our part that merit the abatement of interest in our review of available records and other information for the period from April 15, 2004 to May 8, 2006."

On September 5, 2007, petitioner petitioned the Court for a review of respondent's failure to abate interest pursuant to section 6404. In his petition, petitioner requested the Court to determine that there is no deficiency in tax or additions to tax for tax year 1983. In response to this petition respondent filed a motion to dismiss for failure to state a claim on which relief can be granted, maintaining, inter alia, that petitioner's request for relief was not appropriate in an interest abatement matter. On November 19, 2007, petitioner filed an objection to

respondent's motion.  On January 14, 2008, a hearing with respect to respondent's motion was held.  At the hearing petitioner was given leave to file an amended petition.  On February 19, 2008, petitioner filed an amended petition in which he requested the abatement of interest from April 5, 1999, until April 27, 2006.[4] Petitioner also requested that we abate the imposition of tax-motivated interest assessed pursuant to section 6621(c).[5]

Discussion

## I.  Requests for Abatement of Interest

For tax years beginning before July 31, 1996, the Commissioner had authority to abate the assessment of interest with respect to a deficiency in income tax attributable "to any error or delay by an officer or employee of the Internal Revenue Service (acting in his official capacity) in performing a ministerial act," sec. 6404(e)(1)(A), or "any payment of tax described in section 6212(a) to the extent that any error or delay in such payment is attributable to such officer or employee being erroneous or dilatory in performing a ministerial act," sec. 6404(e)(1)(B), but "only if no significant aspect of such error or delay can be attributed to the taxpayer involved, and

---

[4]Although the decision in Utah Jojoba I became final on Apr. 8, 1998, petitioner requests abatement of interest only from Apr. 5, 1999.

[5]We dismissed as moot respondent's motion to dismiss on Feb. 21, 2008.

after the Internal Revenue Service has contacted the taxpayer in writing with respect to such deficiency or payment", sec. 6404(e)(1) (flush language).[6]

Section 6404(e) is not intended to be routinely used to avoid payment of interest; rather, Congress intended abatement of interest only where failure to do so "would be widely perceived as grossly unfair."  H. Rept. 99-426, at 844 (1985), 1986-3 C.B. (Vol. 2) 1, 844; S. Rept. 99-313, at 208 (1986), 1986-3 C.B. (Vol. 3) 1, 208.

The relevant regulation provides:

> The term "ministerial act" means a procedural or mechanical act that does not involve the exercise of judgment or discretion, and that occurs during the processing of a taxpayer's case after all prerequisites to the act, such as conferences and review by supervisors, have taken place.  A decision concerning the proper application of federal tax law (or other federal or state law) is not a ministerial act.

Sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., 52 Fed. Reg. 30163 (Aug. 13, 1987).

If the Commissioner denies a taxpayer's interest abatement request, the taxpayer may petition this Court for review.  Sec. 6404(h)(1);[7] see <u>Hinck v. United States</u>, 550 U.S. 501, 506 (2007)

---

[6]Sec. 6404(e) was enacted by the Tax Reform Act of 1986 (TRA 1986), Pub. L. 99-514, sec. 1563(a), 100 Stat. 2762.  TRA 1986 sec. 1563(b), 100 Stat. 2762, provided that the section would apply retroactively for tax years beginning after Dec. 31, 1978, in general.

[7]The parties have stipulated that petitioner meets the
(continued...)

(holding that the Tax Court is the exclusive forum for judicial review of the Commissioner's refusal to abate interest); <u>Baral v. Commissioner</u>, T.C. Memo. 2009-113.   Inasmuch as the Commissioner's power to abate interest is discretionary, (1) the Court gives due deference to the Commissioner's determination, and (2) in order to prevail, the taxpayer must prove that the Commissioner exercised his discretion arbitrarily, capriciously, or without sound basis in fact or law.  <u>Woodral v. Commissioner</u>, 112 T.C. 19, 23 (1999).  Our inquiry is a factual one.  See <u>Chakoian v. Commissioner</u>, T.C. Memo. 2009-151; <u>Boyd v. Commissioner</u>, T.C. Memo. 2000-16.  And the taxpayer bears the burden of proof.  Rule 142(a).

Petitioner requests the abatement of interest which otherwise would have accrued between April 5, 1999, and April 27, 2006, as well as the abatement of increased interest which otherwise would be assessed because of a substantial underpayment attributed to a tax-motivated transaction.

II.  <u>Interest Accrued Between April 5, 1999, and April 27, 2006</u>

Section 6225(a) generally provides that no assessment of a deficiency attributable to an adjustment to a partnership item may be made until the decision of the Court with respect to the partnership matter becomes final.  Petitioner contends that

---

[7](...continued)
requirements of sec. 7430(c)(4)(A)(ii).

section 6225(a) does not apply because the stipulation to be bound was an immediately enforceable contract and hence respondent could have assessed the tax against petitioner when the decision in Utah Jojoba I became final.  Specifically, petitioner maintains that there were no discretionary matters for respondent to address because article 6 of the stipulation to be bound waived any restrictions on assessments under section 6225 once Utah Jojoba I became final.  See supra p. 3.  According to petitioner, all that remained to be done by respondent was to prepare and send petitioner a bill, and thus respondent's "failing to make the assessment and send a bill once Utah Jojoba I became final was a ministerial error and refusing to abate interest during the time Utah Jojoba I became final and the bill was issued was an abuse of discretion."

We do not agree that once the decision in Utah Jojoba I became final, all that remained was for respondent to carry out a ministerial act.  The partnership-level proceeding related to this matter, Cal. Jojoba, was still ongoing when Utah Jojoba I was resolved.

We are mindful that the stipulation to be bound contained a provision that if the controlling case (Utah Jojoba I) were to be appealed, the partners of CJI agreed to permit the assessment and collection of deficiencies, notwithstanding the restrictions of section 6225.  However, that provision did not affect the

requirement that the Court enter a decision in Cal. Jojoba before any assessment or collection could occur. And there was no mechanism by which respondent could declare that the Tax Court proceeding in that docket had been resolved in his favor and proceed to assessment before entry of a decision therein. See Larkin v. Commissioner, T.C. Memo. 2010-73.

Further, while there was a delay in finalizing the partnership-level proceeding in Cal. Jojoba, the delay was not as a result of respondent's failure to perform a ministerial act. See Lee v. Commissioner, 113 T.C. 145, 150-151 (1999) ("Respondent's decision on how to proceed in the litigation phase of the case necessarily required the exercise of judgment and thus cannot be a ministerial act."); sec. 301.6404-2T(b)(1), (2), Temporary Proced. & Admin. Regs., supra.

After the Court's decision became final, respondent was required to process the TEFRA closing package. This was done. Respondent's counsel promptly forwarded his files to the appropriate individual. And once the TEFRA closing package was completed, it was sent for supervisory review.

We therefore hold that (1) the handling of the partnership-level proceeding in Cal. Jojoba and the processing and supervisory review of the TEFRA closing package were not delayed by ministerial error, see sec. 301.6404-2T(b)(1), Temporary Proced. & Admin. Regs., supra, and (2) respondent did not abuse

his discretion in failing to abate interest charged to petitioner.

III.  Section 6621(c) Interest

Section 6621(c)(1), as applicable in this matter, provides for an increased rate of interest with respect to "any substantial underpayment attributable to tax motivated transactions".[8]  A "substantial underpayment attributable to tax motivated transactions" is defined pursuant to section 6621(c)(2) as "any underpayment of taxes imposed by subtitle A for any taxable year which is attributable to 1 or more tax motivated transactions if the amount of the underpayment for such year so attributable exceeds $1,000."

Petitioner argues that because Utah Jojoba I did not apply section 6621(c) interest to the partnership in that matter, and because under the stipulation to be bound the outcome of Cal. Jojoba would be determined by the result reached in Utah Jojoba I, section 6621(c) interest should not be assessed in Cal. Jojoba.  Petitioner maintains "This Court has the inherent jurisdiction to force Respondent to comply with his Stipulation to be Bound."

---

[8]Sec. 6621(c) was repealed as of Dec. 31, 1989, by the Omnibus Budget and Reconciliation Act of 1989, Pub. L. 101-239, sec. 7721(b), 103 Stat. 2399.

Petitioner is incorrect.  We do not have jurisdiction pursuant to section 6404 to abate section 6621(c) interest.  See Kincaid v. Commissioner, T.C. Memo. 1999-419.

We therefore hold that (1) the interest arising from Cal. Jojoba that accrued is not the result of an IRS officer or employee "being erroneous or dilatory in performing a ministerial act," and (2) respondent did not abuse his discretion in denying petitioner's request for an abatement of interest.

To reflect the foregoing,

Decision will be entered for respondent.